IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA CAUDLE and KRYSTLE WHITE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SPRINT/UNITED MANAGEMENT COMPANY, a Kansas corporation; and DOES 1 through 100,<br><br>Defendants. | No. C 17-06874 WHA<br><br>**ORDER GRANTING MOTION FOR CLASS CERTIFICATION** |

**INTRODUCTION**

In this putative class action for alleged violations of wage and hour laws, plaintiffs move to certify three separate classes. For the reasons stated below, the motion is **GRANTED**. This order certifies three classes, appoints the named plaintiffs as class representatives, and appoints plaintiffs' counsel of record as class counsel.

**STATEMENT**

Defendant Sprint/United Management Company sells mobile phone devices and services to retail customers. In February 2016, Sprint instituted a redesigned incentive compensation plan called the Sprint Promoter Score Adjustment program. This program centered on calculating a monthly "Sprint Promoter Score" for each Sprint retail store location. Sprint based the Sprint Promoter Score — which was designed to improve customer service and calculated on

a store-wide level — on the aggregated results of customer surveys given after a customer's interaction with the store. The survey, for example, asked customers to rate how likely they were to recommend Sprint to friends or family on a scale of 0 to 10, with a score of 0–6 considered a "Detractor" result and a score of 9–10 considered a "Promoter" result. The number of "Detractor" survey results subsequently affected a store's overall Sprint Promoter Score for that month (Dkt. No. 31-1 at 15:8–23, 21:13–19, 22:3–11, 30:8–31:8).

Sprint also calculated "target" Sprint Promoter Scores for each retail location, which were calculated monthly at a national level based on store type. Under the program at issue, if a Sprint retail store location's Sprint Promoter Score met or exceeded the target score for that month, then the individual commissions of that store's employees remained unaffected. If, however, the store's Sprint Promoter Score fell below the target score, then Sprint decreased the individual commissions of that store's employees by 10 percent (*id*. at 29:3–18).

In March 2017, Sprint eliminated the Sprint Promoter Score Adjustment program due to negative feedback from employees and the program's overall lack of impact (*id*., Haines Decl., Exh. C).

Plaintiffs Joshua Caudle and Krystle White — a former store manager and lead retail consultant, respectively — worked in various northern California Sprint retail store locations. They assert that the 10 percent "across-the-board deduction from employees' individual earned commission" was based on factors outside the individual employees' control and unrelated to any individual employees' efforts regarding a particular sale or transaction. Thus, according to plaintiffs, these 10 percent deductions from employees' commissions under the Sprint Promoter Score Adjustment program (in effect from February 2016 to March 2017) were unlawful deductions from earned wages under California Labor Code Sections 221–23 (Dkt. No. 29 ¶¶ 3, 9–10, 12).[1]

---

[1] On October 18, plaintiffs filed a second amended complaint, which eliminated their second theory of liability in light of *Prachasaisoradej v. Ralphs Grocery Co.*, 42 Cal.4th 217, 239 (2007), which plaintiffs conceded rendered that theory non-viable (Dkt. Nos. 25, 29).

2

Based on this theory, the operative complaint asserted the following five claims for relief: (1) unlawful deductions from wages; (2) wage statement violations; (3) waiting time penalties; (4) unfair competition practices; and (5) PAGA civil penalties (*id*. ¶¶ 22–44).

Plaintiffs now seek to represent current and former Sprint employees in California and certify the following three classes pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3):

> <u>Class 1 (Unlawful Deductions – SPS Class)</u>: All current and former employees of Sprint who worked at Sprint's retail store location(s) in California and whose compensation was based in full or in part on incentive compensation (also called "commissions"), and whose commissions were reduced by a Sprint Promoter Score Adjustment, at any time from February 2016 to March 2017.
>
> <u>Class 2 (Wage Statement Class)</u>: All members of the Unlawful Deductions – SPS Class whose commissions were reduced by a Sprint Promoter Score Adjustment at any time from September 29, 2016 through March 2017.
>
> <u>Class 3 (Waiting Time Class)</u>: All members of the Unlawful Deductions – SPS Class who separated their employment from Sprint at any time from September 29, 2014 through the present.

The first class plaintiffs seek to certify is directly based on Sprint's policy at issue (*i.e.*, the Sprint Promoter Score Adjustment program). The latter two classes plaintiffs seek to certify are derivative of the first class (Dkt. No. 31 at 3). This order follows full briefing and oral argument.

**ANALYSIS**

Class certification is appropriate when a plaintiff can show that all of the prerequisites of Rule 23(a) and one of the requirements of Rule 23(b) has been met. *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956–57 (9th Cir. 2013). Rule 23(a) considers whether "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

Plaintiffs seek certification under Rule 23(b)(3), which requires them to show that "questions of law or fact common to class members predominate over any questions affecting

3

only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Sprint does not appear to dispute that plaintiffs have satisfied the requirements for numerosity, adequacy, or superiority for any of the three proposes classes. Rather, as to the first proposed class ("Unlawful Deductions – SPS Class"), Sprint opposes certification on the contention that the deductions were pursuant to a facially lawful policy. As to the two other derivative proposed classes ("Wage Statement" and "Waiting Time" classes), Sprint opposes certification based on plaintiffs' alleged lack of both standing and typicality due to *res judicata*.

### 1. NUMEROSITY.

All of the proposed classes — all of which encompass approximately 1,420 to 2,684 members — satisfy the numerosity requirement (*see* Dkt. No. 31 at 15).

### 2. ADEQUACY.

A proposed class representative is adequate if they "will fairly and adequately protect the interests of the class." Rule 23(a)(4). Our court of appeals has explained that a representative meets this standard if they (1) have no conflicts of interest with other class members, and (2) will prosecute the action vigorously on behalf of the class. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Nothing in the record suggests that plaintiffs' interests deviate from the interests of other class members — plaintiffs and other class members seek to recover from the same alleged violations in the same manner based on the same policies and practices by Sprint. Nor does it suggest any risk that plaintiffs (or their counsel) would fail to prosecute the action vigorously on behalf of the class. Accordingly, this order finds that plaintiffs are adequate representatives for the proposed classes.

### 3. COMMONALITY AND PREDOMINANCE.

Commonality is satisfied if "there are questions of law or fact common to the class." Rule 23(a)(2). "A common contention need not be one that will be answered, on the merits, in favor of the class. It only must be of such a nature that it is capable of classwide *resolution*." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015) (citations omitted). Class

4

certification under Rule 23(b)(3) requires a showing that common questions "predominate over any questions affecting only individual members."

Here, plaintiffs pursue two categories of claims on which to certify class: (1) allegedly unlawful wage deductions based on the Promoter Score Adjustment program, and (2) claims derivative of the first claim (*i.e.*, wage statement and waiting time claims).

These claims turn on the legality (or illegality) of the deductions applied on a uniform basis under the Promoter Score Adjustment program at issue. In an attempt to dispute commonality, Sprint concentrates its fire on the merits of plaintiffs' claims, arguing that class certification should be denied because the program at issue is "a facially lawful policy . . . leaving nothing further for the trier of fact to decide on common (or any) proof" (Dkt. No. 37 at 6). A ruling on the merits at this stage, however, would be improper. While class certification analysis "may 'entail some overlap with the merits of the plaintiff's underlying claim,'" it does not grant "license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013). "Merits questions may be considered to the extent — *but only to the extent* — that they are relevant to determining whether" plaintiffs have satisfied the requirements for class certification. *Ibid*. (emphasis added).[2]

Sprint relies on *Clemens v. Hair Club for Men, LLC*, No. C 15-01431 WHA, 2016 WL 1461944, at *5 (N.D. Cal. Apr. 14, 2016), for the proposition that "[a]though the common questions . . . need not be resolved in favor of the class to support certification, it is nevertheless appropriate to probe behind plaintiffs' theory and consider the merits of the case to the extent consideration of the requirements of Rule 23 is 'enmeshed in the factual an legal issues' presented on the merits." In denying certification on a meal and rest period claim, that order noted that the plaintiffs' first theory of liability was based on the "bald assertion" that the defendant's policy was unlawful — meaning that the case would likely turn on their second theory, under which individualized questions would have predominated. *Ibid*.

---

[2] This order notes that Sprint has not filed a motion to dismiss or motion for summary judgment on any issue, including the one it contests in the instant motion, in the nearly one year since plaintiffs filed their complaint.

5

Here, in contrast, the requirements of common questions and predominance of those common questions are *not* enmeshed in the factual and legal issues presented on the merits. The existence of common questions as to the alleged unlawfulness of the uniformly-applied Promoter Score Adjustment program — a claim more colorable than that of the plaintiffs' "bald assertion" in *Clemens* — and the predominance of those common questions in this case are readily apparent on the face of plaintiffs' claims. And, as plaintiffs point out, Sprint's class-wide defense as to the legality of the policy further emphasizes the existence of a common question of law readily capable of class-wide adjudication. If Sprint is correct, then Sprint will reap the benefit of a class-wide victory.

Sprint's citations to *Coleman v. Jenny Craig, Inc.*, No. C 11-01301 MMA, 2013 WL 6500457, at *11 (S.D. Cal. Nov. 27, 2013) (Judge Michael Anello), and *Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 641 (N.D. Cal. 2010) (Judge Phyllis Hamilton), are similarly unavailing. Both *Coleman* and *Washington* involved indisputably lawful official policies. Instead, the issue was whether there existed *unofficial* policies and practices at various centers and stores, as the plaintiffs alleged, that deviated from the official policies — which, in turn, would have involved individualized inquiries and thereby destroy the predominance of a common question. *Coleman*, 2013 WL 6500457, at *12; *Washington*, 271 F.R.D. at 640. No such issue lurks in the instant motion. Rather, this action involves the disputed legality of a common policy that Sprint itself acknowledged it followed.

Accordingly, plaintiffs have satisfied the requirements of common questions and their predominance under Rule 23(a)(2) and (b)(3) for all three proposed classes.

**4. SUPERIORITY.**

Rule 23(b)(3) requires that, in addition to the predominance of common questions, a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." The rule further provides the following pertinent factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

6

>   (C)  the desirability or undesirability of concentrating the litigation
>   of the claims in the particular forum; and
>
>   (D)  the likely difficulties in managing a class action.

Here, Sprint does not dispute that a class action would be superior to other methods for adjudicating the claims at issue. A single proceeding in this forum will be far more efficient than adjudicating hundreds of individual claims, which are all based on the same legal theory and overlapping evidence. This order therefore finds that a class action would be superior to individual actions for the adjudication of plaintiffs' claims.

### 5. TYPICALITY.

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff[], and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Here, Sprint disputes typicality as to the two derivative proposed classes (the wage statement and waiting time classes) on the contention that plaintiffs allegedly lack standing to recover those claims and are subject to the "unique" defense of *res judicata*.

The gravamen of Sprint's argument involves a prior settlement that allegedly prevents plaintiffs from asserting these derivative claims. Sprint argues that, as class members of the settlement in *Salamanca v. Sprint/United Management Company*, No. C 15-05084 (N.D. Cal. Mar. 9, 2018) (Judge Jeffrey White), plaintiffs released the wage statement and waiting time claims and are thus barred under *res judicata* from asserting these claims in the instant action.

Plaintiffs counter by arguing that Sprint is judicially estopped from asserting that plaintiffs released their derivative claims in the *Salamanca* settlement. This order agrees.[3]

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th. Cir. 2001). When asked to apply judicial estoppel, courts may consider whether (1) a party's former position is clearly inconsistent with its current position; (2) whether the party persuaded the court to accept its original position such that judicial acceptance of the party's current position would create "the perception that either the first or second court was misled"; and (3) whether the party who switched positions would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 782–83 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001)).

*First*, plaintiffs point to joint supplemental briefing in *Salamanca* filed in response to Judge White's request for more information regarding, *inter alia*, the scope of the then-proposed settlement agreement. There, the plaintiffs asserted that Sprint violated various wage and hour laws based on its alleged failure to pay accrued vacation days, including "floating holidays," upon termination. As here, the plaintiffs in *Salamanca* asserted similar derivative wage statement and waiting time claims (Dkt. No. 31-4, Exh. A at 2).

Before preliminarily approving the settlement agreement, Judge White — troubled by the potentially expansive release language in the initial proposed settlement agreement — specifically inquired as to release's scope as follows (*id*. at 4–5) (emphasis added) (citations omitted):

> [T]he Motion and supporting documentation make clear that this case is rooted in Defendant's alleged failure to pay accrued vacation days, including "floating holidays" and that it is this underlying failure that allegedly resulted in violations of various wage and hour statutes. The FAC, however, is general in its allegations and does not always make this connection readily apparent. *For example, while the classes proposed in*

---

[3] This order notes again that "[m]erits questions may be considered to the extent . . . that they are relevant to determining whether" plaintiffs have satisfied the requirements for class certification. *Amgen*, 568 U.S. at 466. Here, it reaches the merits as to the issue of *res judicata* to the extent needed to determine whether plaintiffs have satisfied the typicality requirement.

> *the FAC are all tied to the "Vacation Pay Class," the substantive allegations for the section 226 claim does not make clear that the claim is solely premised on Defendant's alleged mishandling of accrued vacation time. The same can be said of the third cause of action for the alleged failure to timely pay final wages, in violation of California Labor Code sections 201–203.*
>
> The Court is concerned about the potential breadth of the release when combined with the general nature of the FAC. The release encompasses causes of action "of any kind whatsoever" that "are or could have arisen out of the allegations in the Complaint in the Action." This would appear to drastically expand the scope of the release beyond the "accrued vacation time" subject matter of the case. *For instance, if a member of the class in this action believed that Defendant failed to provide him an accurate wage statement because the wage statements reflected a lower hourly rate (unrelated to any concerns regarding accrued vacation days), would this class member be barred from raising this independent, unrelated claim in a future case?* It could be argued that such a claim "could have" arisen out of the general section 226 allegations in the FAC. Stated another way, it is not clear whether — and, if so, why — the release in this action encompasses statutory wage and hour claims that are unrelated to Defendant's alleged mishandling of accrued vacation days.

Judge White further ordered the parties to "address the reasonableness of the release, including whether . . . the language of the release should be modified to *clarify that the release only applies to claims related to or arising out of Defendant's alleged treatment of accrued vacation time*" (*id*. at 5) (emphasis added).

The parties subsequently *jointly* responded with the affirmation that the release was "intended to encompass claims that are based on the actual allegations of the complaint and claims based on the identical factual predicate as that underlying the claims in the settled action" (Dkt. No. 31-4, Exh. B at 4). The parties further represented to Judge White that "the release d[id] not encompass wage claims unrelated to claims for unpaid vacation and floating holidays" (*ibid*.). The parties accordingly updated their "Released Claims" language to reiterate that the release stemmed from the unpaid vacation and floating holidays factual allegations as follows:

> (a) any claim based on the alleged failure by Sprint to pay vacation and floating-holiday wages; (b) any claim based on the alleged failure by Sprint to provide accurate itemized wage statements to employees; (c) any claim based on the alleged failure to pay all wages due upon separation of employment; (d) any right or claim for unfair business practices in violation of California Business & Professions Code § 17200 et seq.; and (e) any right or claim of violation of the California Labor Code arising from or related to Sprint's alleged failure to pay terminated employees for vacation and floating holiday wages, or any other state or federal statute, rule and/or regulation (including any Industrial Welfare Commission Wage Order), or similar causes of action which any Participating Class Member

9

> has or might have, known or unknown, of any kind whatsoever, related to the alleged failure by Sprint to pay vacation and floating-holiday wages.

Sprint argues that the *Salamanca* parties allocated a portion of the settlement funds toward derivative claims such as waiting time penalties and, as such, is entitled to claim preclusion on those claims (Dkt. No. 37 at 16). True, settlement funds in *Salamanca* were apportioned for such derivative claims. And, as Sprint point out, the *Salamanca* parties did not specifically change the final release claim language with respect to the derivative claims.

The parties (including Sprint), however, responded to Judge White's direct inquiry — which specifically called out as examples the derivative claims also at issue in the instant motion — by affirming that the scope of release was limited to claims related to the "accrued vacation time" subject matter of that case. The parties' representations to Judge White thus indicated that those funds encompassed those derivative claims *only* in connection with the alleged mishandling of accrued vacation days. And, as *derivative* claims, it is now natural to interpret the narrowed scope of released claims to similarly narrow the scope of claims derivative to the specific alleged wage claims. Indeed, the joint response, for example, explicitly limited the wage statement settlement amount to "one inaccurate wage statement," *i.e.*, the last wage statement, as the accrued floating holidays at issue were not "wages earned" under Section 226(a) until an employee's termination (Dkt. No. 31-4, Exh. B. at 3). Thus, the full record as a whole in *Salamanca* shows that Sprint's asserted *res judicata* defense here is "clearly inconsistent" with its previous position before Judge White, who was explicitly concerned about the very gimmick attempted here.[4]

*Second*, Judge White subsequently approved the proposed settlement agreement in *Salamanca* based on the parties' joint responses. *Third*, Sprint would "derive an unfair advantage" if, having obtained settlement approval in *Salamanca* by appeasing Judge White's

---

[4] Though Sprint's counsel complained of potential stacking of penalties during oral argument, this order finds that such a predicament is of Sprint's own making. Sprint made unqualified representations to Judge White that the release did not include any wage claims unrelated to the unpaid vacation and floating holidays subject matter, despite Judge White's express invitation for clarification as to why the release might go beyond that subject matter (*see* Dkt. No. 31-4, Exh. A at 5) ("[I]t is not clear whether — and, if so, why — the release in this action encompasses statutory wage and hour claims that are unrelated to Defendant's alleged mishandling of accrued vacation days.").

10

concerns by representing a narrowed scope of release, it could successfully assert a *res judicata* defense to bar plaintiffs' present derivative claims based on unrelated factual allegations. This order therefore finds that Sprint is judicially estopped from asserting *res judicata* as to plaintiffs' derivative claims at issue in the instant motion.[5]

Accordingly, this order finds that plaintiffs have standing to bring the wage statement and waiting time claims and satisfied the typicality requirement as to all three proposed classes.

**6.     EVIDENTIARY ISSUES.**

Both sides request judicial notice of various documents previously filed in three other cases involving class action settlements with Sprint (Dkt. Nos. 31-4, 41). Neither side opposes. A court may judicially notice a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRE 201(b). Accordingly, the requests for judicial notice of documents are **GRANTED**.

Sprint also objects to several items of evidence submitted with plainitffs' motion. Because consideration of the objected-to materials does not impact the outcome of this order, Sprint's objections are **OVERRULED AS MOOT**.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for class certification is **GRANTED**. The following classes are **CERTIFIED**:

> Class 1 (Unlawful Deductions – SPS Class): All current and former employees of Sprint who worked at Sprint's retail store location(s) in California and whose compensation was based in full or in part on incentive compensation (also called "commissions"), and whose commissions were reduced by a Sprint Promoter Score Adjustment, at any time from February 2016 to March 2017.
>
> Class 2 (Wage Statement Class): All members of the Unlawful Deductions – SPS Class whose commissions were reduced by a Sprint Promoter Score Adjustment at any time from September 29, 2016 through March 2017.

---

[5] This order notes that the *same counsel* for Sprint, Harold M. Brody of Proskauer Rose LLP, in the *Salamanca* action also represented Sprint in the instant action until October 9 — just two days before plaintiffs' motion for class certification were due (*see* Dkt. Nos. 26–27).

11

> Class 3 (Waiting Time Class): All members of the Unlawful Deductions – SPS Class who separated their employment from Sprint at any time from September 29, 2014 through the present.

These class definitions shall apply for all purposes, including settlement. Plaintiffs Joshua Caudle and Krystle White are hereby **APPOINTED** as class representatives. Plaintiffs' counsel from the Haines Law Group, APC, are hereby **APPOINTED** as class counsel.

By **JANUARY 4, 2019 AT NOON**, the parties shall jointly submit a proposal for class notification with a plan to distribute notice, including by first-class mail. In crafting their joint proposal, counsel shall please keep in mind the undersigned judge's guidelines for notice to class members in the "Notice and Order Regarding Factors to be Evaluated for Any Proposed Class Settlement" (Dkt. No. 19). The Court further reminds counsel of plaintiffs' intention of notifying class members of the tolling issue in connection with the removed deactivation theory of liability (Dkt. No. 28 at 4).

**IT IS SO ORDERED.**

Dated: December 18, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE