1

**HAINES LAW GROUP, APC**
Paul K. Haines (SBN 248226)

2
phaines@haineslawgroup.com
Tuvia Korobkin (SBN 268066)

3
tkorobkin@haineslawgroup.com
Stacey M. Shim (SBN 305911)

4
sshim@haineslawgroup.com
222 N. Sepulveda Blvd., Suite 1550

5
El Segundo, California 90245
Tel: (424) 292-2350

6
Fax: (424) 292-2355

7
*Attorneys for Plaintiffs, Class*
*Members, and Aggrieved Employees*

8

9
## UNITED STATES DISTRICT COURT

10
## NORTHERN DISTRICT OF CALIFORNIA

11

12
JOSHUA CAUDLE and KRYSTLE WHITE, as individuals and on behalf of all others similarly situated,

13

14

15
                    Plaintiffs,

16
        vs.

17
SPRINT/UNITED MANAGEMENT COMPANY, a Kansas corporation; and DOES 1 through 100,

18

19

20
                    Defendants.

Case No.: 3:17-cv-06874-WHA

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Judge:  Hon. William Alsup
Date:   June 20, 2019
Time:   8:00 a.m.
Ctrm.:  12

Complaint Filed:    Sept. 29, 2017
FAC Filed:          Dec. 6, 2017
SAC Filed:          Oct. 10, 2018

21

22

23

24

25

26

27

28

NOTICE IS HEREBY GIVEN that on June 20, 2019 at 8:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 12 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable William Alsup, Plaintiffs Joshua Caudle and Krystle White, as individuals and on behalf of all others similarly situated, will, and hereby do, move this Court for entry of an Order, pursuant to Fed. R. Civ. Proc. 23(e):

1. Preliminarily approving the Class Action Settlement Agreement and Release ("Settlement"), attached as Exhibit 1 to the Declaration of Paul K. Haines submitted concurrently herewith;

2. Appointing Simpluris, Inc., as the third-party settlement administrator for mailing notices and otherwise administering the settlement;

3. Approving the proposed Class Notice, and directing that it be disseminated to the Class Members as provided in the Settlement Agreement; and

4. Scheduling a Final Approval Hearing to consider final approval of the Settlement.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the declaration of Paul K. Haines and exhibits attached thereto, the declaration of Jessica Bitterman of Simpluris, Inc. and exhibits attached thereto, the pleadings and other papers filed in this action, and any further oral or documentary evidence or argument presented at the hearing.

Dated: May 16, 2019

Respectfully submitted,
HAINES LAW GROUP, APC


By:      _/s/ Paul K. Haines_____
Paul K. Haines, Esq.
Attorneys for Plaintiffs, the Classes,
and Aggrieved Employees

1

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ................................................................................................... 1

II.  SUMMARY OF THE LITIGATION ...................................................................... 2

    A.  Plaintiffs' Claims ................................................................................................ 2

    B.  Sprint Denies Plaintiffs' Claims ....................................................................... 2

    C.  Procedural History .............................................................................................. 5

        1.  Initial Pleadings ............................................................................................ 5

        2.  Discovery ....................................................................................................... 5

        3.  Class Certification ........................................................................................ 6

        4.  Mediation and Settlement ............................................................................. 6

III. THE SETTLEMENT MERITS PRELIMINARY APPROVAL ............................. 7

    A.  The Settlement Is Fair, Reasonable, and Adequate .......................................... 7

        1.  The Strength of Plaintiffs' Case .................................................................... 7

        2.  Risk, Expense, and Duration of Further Litigation ...................................... 9

        3.  Risk of Maintaining Class Action Status ..................................................... 9

        4.  Amount Offered in Settlement .................................................................... 10

            a.   Underlying Unpaid Wages (Unlawful Deductions) ............................ 10

            b.   Waiting Time Penalties ....................................................................... 10

            c.   Wage Statement Penalties ................................................................... 11

            d.   PAGA Civil Penalties .......................................................................... 11

        5.   Discovery Completed and the Status of Proceedings ................................ 12

        6.  The Experience and Views of Counsel ...................................................... 13

        7.  Presence of Government Participant ............................................................ 13

    B.  The Preliminary Approval Standard Is Met ..................................................... 13

        1.   The Settlement is Within the Range of Possible Approval ......................... 13

        2.  The Settlement Resulted from Serious, Informed, and Non-Collusive Negotiations .. 14

        3.  The Settlement is Devoid of Obvious Deficiencies ..................................... 14

            a.   The Settlement Provides Significant Monetary Payments ................... 14

            b.   The Other Terms of Settlement Are Reasonable ................................ 16

            c.   Incentive Payments, Attorneys' Fees, Costs, and Payment to LWDA ................. 17

IV.  THE PROPOSED NOTICE PROCESS SATISFIES DUE PROCESS ............................. 19

V.   CONCLUSION ................................................................................................... 19

## **TABLE OF AUTHORITIES**

**Federal Cases**

*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004)......................19

*Dunleavy v. Nadler*, 213 F.3d 454 (9th Cir. 2000) ................................................ 12

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974) ............................................ 18

*Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989) ......................................... 7

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)...................17

*In re Pacific Enterprises Securities Litigation*, 47 F.3d 373 (9th Cir. 1995) ............................ 13

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)...................... 9

*Patel v. Nike Retail Svcs., Inc.*, 58 F.Supp.3d 1032 (N.D. Cal. 2014)........................ 11

*Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992) ........................................ 13

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2003)...................................... 7, 17

**State Cases**

*Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157 (2008) .......................... 8, 10, 11

*Barnhill v. Robert Saunders & Co.*, 125 Cal.App.3d 1 (1981)................................ 8, 10

*Carrington v. Starbucks Corp.*, 30 Cal.App.5th 504 (2018)................................... 5, 9

*Davis v. Farmers Ins. Exch.*, 245 Cal.App.4th 1302 (2016)........................................7

*Hudgins v. Neiman Marcus Grp., Inc.*, 34 Cal.App.4th 1109 (2007)................................. 2, 3, 8

*Kao v. Joy Holiday*, 12 Cal.App.5th 947 (2017) ...............................................8, 10

*Price v. Starbucks Corp.*, 192 Cal.App.4th 1136 (2011)......................................... 5

*Sciborski v. Pac. Bell Directory*, 205 Cal.App.4th 1152 (2012) ............................... 2, 8

*Steinhebel v. Los Angeles Times Commc'ns, LLC*, 126 Cal.App.4th 696 (2005)........................ 3

*Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112 (2012)................................. 5

*Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224 (2001)................................. 11

**Federal Statutes and Rules**

Fed. R. Civ. Proc. 23(e)(2)............................................................7

Fed. R. Civ. Proc. 30(b)(6) .......................................................... 6

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

**State Statutes and Rules**

8 Cal. Code Regs. § 13520...................................................................................... 4

Labor Code § 203.......................................................................................... 4, 16

Labor Code § 226............................................................................................ 4

Labor Code § 2699............................................................................. 5, 11, 13, 18

**Unpublished Cases**

*Bravo v. Gale Triangle, Inc.*
 No. CV 16-3347 BRO (GJSx), 2017 WL 708766 (C.D. Cal. Feb. 16, 2017)...............17

*Chu v. Wells Fargo Inv., LLC*
 No. C 05-4526-MHP, 2011 WL 672645 (N.D. Cal. Feb. 16, 2011)........................18

*Deaver v. Compass Bank*
 No. 13-cv-00222-JSC, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015)....................12

*Fleming v. Covidien, Inc.*
 No. ED-CV-10-1487-RGK(OPx), 2011 WL 7563047 (C.D. Cal. Aug. 12, 2011)..........5

*Gooding v. Vita-Mix Corp.*
 No. 2:16-cv-3898-ODW (C.D. Cal.)..............................................................15-16

*Gribble v. Cool Transports Inc.*
 No. CV 06-04863 GAF SHx, 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008) .................13

*Hernandez v. Martinez*
 No. 12-CV-06133-LHK, 2014 WL 3962647 (N.D. Cal. Aug. 13, 2014)...........…..…...10

*In re Portal Software, Inc. Sec. Litig.*
 No. C-03-5138-VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007).....................…9

*Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau*
 No. C-07-362-MHP, 2009 WL 3562871 (N.D. Cal. Oct. 27, 2009).......................17

*Lazarin v. Pro Unlimited, Inc.*
 No. C11-3609-HRL, 2013 WL 3541217 (N.D. Cal. 2013).................................18

*Nguyen v. Wells Fargo Bank*
 No. 15-cv-5239-JCS, 2016 WL 5390245 at 16 (N.D. Cal. Sept. 26, 2016).................8

*Reyes v. CVS Pharmacy, Inc.*

     No. 1:14-cv-964-MJS, 2016 WL 3549260 (E.D. Cal. Jun. 29, 2016)…………………..16

*Richardson v. Interstate Hotels & Resorts, Inc.*

     No. C-16-cv-6772-WHA, 2019 WL 803746 (N.D. Cal. Feb. 21, 2019)……………....12

*Ross v. U.S. Bank Nat'l Ass'n*

     No. C 07-2951 SI, 2010 WL 3833922 (N.D. Cal. Sept. 29, 2010)………..………...17

*Saechao v. Landry's, Inc.*

     No. 3:15-cv-815-WHA (N.D. Cal. Aug. 19, 2016) ........................................................12

*Stovall-Gusman v. W.W. Granger, Inc.*

     No. 13-cv-02540-HSG, 2015 WL 3776765 (N.D. Cal. June 17, 2015) ........................12

**<u>Other Sources</u>**

*Newberg on Class Actions* (4th ed. 2013) § 11:24-25……………………………………...13

*Manual for Complex Litigation* (3d ed. 1995) § 30.41 ........................................................ 7, 13

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs Joshua Caudle and Krystle White ("Plaintiffs"), on behalf of the certified Classes, respectfully request that this Court preliminarily approve the Class Action Settlement Agreement and Release ("Settlement"), entered into by Plaintiffs and Defendant Sprint/United Management Company ("Sprint").[1] This is a significant, non-reversionary settlement reached after nearly two years of litigation, and following a ruling by this Court on class certification (Dkt. No. 45).  This Settlement was only achieved following comprehensive discovery as to the damages suffered by each individual Class Member, and extensive arm's-length negotiations by the parties.  The Settlement was only reached following a double-blind mediator's proposal that was made by the mediator after the conclusion of mediation.

If the Settlement is approved, Sprint will pay a Gross Settlement Fund of **Four Million Dollars** ($4,000,000.00). After deducting requested amounts for attorneys' fees, costs, incentive payments, and payment to the Labor & Workforce Development Agency (LWDA), all Participating Class Members will receive full, dollar-for-dollar reimbursement of all amounts deducted from their commissions as part of Sprint's SPS Adjustment Program (i.e., all of the underlying unpaid wages at issue), *plus* interest, *plus* more than $1.4 million for derivative penalties, an amount that exceeds the amount of underlying unpaid wages.  If none of the 2,290 Class Members opt-out of the Settlement, average Class Member payments are expected to be *at least* $1,177.73 each, an excellent result particularly given the limited claims alleged in this case.

The Settlement provides a substantial recovery for Class Members, whereby Class Members will receive 100% of their allegedly unlawfully deducted wages, plus substantial amounts in interest and penalties, on claims that faced significant defenses on the merits. Plaintiffs submit the proposed settlement is well within the range of possible approval, and is a great result for Class Members. For these reasons, which are discussed in more detail below, Plaintiffs respectfully request that this Court preliminarily approve the Settlement.

---

[1] The Settlement is attached as Exhibit 1 to the Declaration of Paul K. Haines ("Haines Decl."). The proposed Class Notice is attached as Exhibit A to the Settlement.

## II.  SUMMARY OF THE LITIGATION

### A.  Plaintiffs' Claims

Plaintiffs are former Sprint retail employees whose compensation was based in part on monthly incentive compensation, also called "commissions." Plaintiffs and other retail employees earned commissions based on, among other things, the number and type of service plans activated, and phones and accessories sold, by the employee in each month.

The primary issue in this case concerns Sprint's prior use (from February 2016 through March 2017) of the "Sprint Promotor Score (SPS) Adjustment." The SPS Adjustment was a 10% reduction of employee commissions that Sprint applied when an employee's retail store location did not meet its monthly target Sprint Promoter Score, which in turn was based on results from customer surveys. Plaintiffs allege that these "adjustments" to employee compensation amounted to illegal wage deductions under Labor Code §§ 221-223 because, *inter alia*, the deductions were based on factors beyond employees' control and were not tied to the transactions that earned the commissions. *See Hudgins v. Neiman Marcus Grp., Inc.*, 34 Cal.App.4th 1109, 1123-24 (2007) (holding that conditions placed on earned commissions must relate to the sale that earns the commission, and that "[an employer] cannot avoid a finding that its [commission deduction] policy is unlawful simply by asserting that the deduction is just a step in its calculation of commission income."); *Sciborski v. Pac. Bell Directory*, 205 Cal.App.4th 1152, 1168-69 (2012) ("[A]n employer may not require an employee to agree to a wage deduction…based on conditions that are unrelated to the sale…"). Based on information obtained in discovery, Sprint deducted a total of $1,046,526.18 from employee commissions as a result of the SPS Adjustment program.

Plaintiffs also allege derivative claims for wage statement penalties under Labor Code § 226, waiting time penalties under Labor Code §§ 201-203, and for civil penalties under the Labor Code Private Attorneys General Act ("PAGA"), Labor Code § 2698 *et seq*.

### B.  Sprint Denies Plaintiffs' Claims

Sprint vigorously disputes that it has any liability as a result of its SPS Adjustment program, and presents multiple defenses to each of Plaintiffs' claims. With respect to Plaintiffs' underlying claim for unlawful deductions, Sprint contends that SPS Adjustments were simply one

factor in calculating employee commissions, rather than a deduction taken from previously "earned" wages, and that the SPS Adjustment was clearly spelled out and agreed to under the explicit terms of employees' compensation plans. Thus, under the California Supreme Court's decision in *Prachasaisoradej v. Ralphs Grocery Co.*, Sprint contends its SPS Adjustment program was facially lawful. 42 Cal.4th 217, 239 (2007) (finding variation in amount of incentive compensation due to store profitability not an illegal deduction where the incentive plan explained how the incentives would be calculated); *see also Steinhebel v. Los Angeles Times Commc'ns, LLC*, 126 Cal.App.4th 696, 705 (2005) ("[C]ontractual terms must be met before an employee is entitled to a commission"); *Koehl v. Verio, Inc.*, 142 Cal.App.4th 1313, 1337 (2006) (finding that Lab. Code § 221 "prohibits an employer only from collecting or receiving wages that have already been earned by performance of agreed-upon requirements.")  Sprint points to the plain language of the Commission Acknowledgment Forms ("CAFs") distributed to employees, which, Sprint contends, clearly explain the SPS Adjustment as a step in calculating total commissions.

Indeed, at the hearing on Plaintiffs' Motion for Class Certification, this Court appeared to express doubt as to Plaintiffs' underlying theory of liability. Among other things, the Court presented a hypothetical scenario where a retail store promises an employee a 10% commission for selling products, and a 20% commission on those same sales if the employee's store – as a whole – met certain pre-set goals, in order to encourage teamwork. "So, so the person goes to work, selling whatever they sell. And at the end of a given month, not through any fault of theirs, they -- the store fails to meet the target. And they only get the 10 percent commission. Isn't that okay? If that was the ground rule going in?" *See* Haines Decl., Exh. 2 (Transcript from 11/28/18 hearing) at 20:15-21:3.

Sprint also contends that many of the cases relied upon by Plaintiffs, including *3, s*, involved unlawful deductions that amounted to recoupment of business expenses that would otherwise be borne by the employer.  Here, in contrast, the SPS Adjustment does not recoup a business expense. Therefore, Sprint contends, even if the SPS Adjustment is a wage "deduction," it is not the type of deduction that is unlawful under Labor Code §§ 221-223.

///

As for Plaintiffs' derivative claim for wage statement penalties, Sprint contends this claim would fail because Plaintiffs' underlying claim fails, and because employee wage statements always showed the correct amount *actually paid* to the employee, even assuming, *arguendo*, that employees were underpaid due to unlawful deductions. Sprint points to *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal.App.5th 1308 (2018), a case decided after this lawsuit was filed, which held that employees were not entitled to derivative wage statement penalties under Labor Code § 226 based on a claim for unpaid wages, where the wage statements accurately showed the amount actually paid to the employees. *Maldonado*, 22 Cal.App.5th at 1336-37 (agreeing with employer's "commonsense position that the pay stubs were accurate in that they correctly reflected the hours worked and the pay received…The purpose of section 226 is to *document* the *paid wages* to ensure the employee is fully informed regarding the calculation of those wages.") (italics in original; citation omitted). Sprint further argues that Plaintiffs could not show that any wage statement violations were "knowing and intentional," or that they or any other employees suffered actual "injury" as a result of allegedly inaccurate wage statements, both of which must be established in order to recover penalties under Labor Code § 226(e).

With respect to Plaintiffs' derivative claim for waiting time penalties, Sprint contends this claim would fail because Plaintiffs' underlying claim fails, and because Sprint possesses good-faith defenses to Plaintiffs' underlying claim, which precludes the imposition of the penalty. *See* Labor Code § 203 (imposing waiting time penalty for "willful" failure to pay final wages); *see also* 8 Cal. Code Regs. § 13520 (a "good faith dispute that any wages are due will preclude imposition of waiting time penalties….A 'good faith dispute' that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist."); *Kao v. Joy Holiday*, 12 Cal.App.5th 947, 963 (2017) (holding "good faith dispute" over employee's exempt status precluded imposition of waiting time penalty over contested wages owed). This is especially true, Sprint contends, given that this Court itself expressed doubts at the class certification hearing over the viability of Plaintiffs' underlying claim, as explained above.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

As for Plaintiffs' claim for PAGA civil penalties, Sprint argued that this claim would fail because Plaintiffs' underlying claim fails. *See*, *e.g.*, *Price v. Starbucks Corp.*, 192 Cal.App.4th 1136, 1147 (2011) ("Because the underlying causes of action fail, the derivative…PAGA claims also fail."). Sprint further asserts that even if Plaintiffs were to prevail on their underlying claim, the Court would substantially reduce any PAGA penalties awarded in light of Sprint's good-faith defenses. *See* Labor Code § 2699(e)(2) (authorizing reduction in PAGA penalties in court's discretion); *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112, 1135 (2012) (affirming reduction of PAGA penalties because "the evidence showed…defendants took their obligations…seriously and attempted to comply with the law"); *Fleming v. Covidien, Inc.*, No. ED-CV-10-1487-RGK(OPx), 2011 WL 7563047 at *4 (C.D. Cal. Aug. 12, 2011) (reducing PAGA penalties by over 82%, in part because employer was "not aware" of violations); *Carrington v. Starbucks Corp.*, 30 Cal.App.5th 504, 529 (2018) (affirming PAGA civil penalty of just $5 per pay period where employer made "good faith attempts" to comply with the law).

### C.   Procedural History

#### 1.   Initial Pleadings

Plaintiffs filed their original Complaint on September 26, 2017 in Marin County Superior Court, alleging claims for unlawful wage deductions (Lab. Code §§ 221-223), wage statement penalties (Lab. Code § 226), waiting time penalties (Lab. Code §§ 201-203), and unfair competition (Bus. & Prof. Code § 17200). On November 30, 2017, Sprint removed the action to this Court pursuant to the Class Action Fairness Act ("CAFA"). Dkt. No. 1. On December 6, 2017, Plaintiffs filed their First Amended Complaint, which added a cause of action for civil penalties under PAGA. Dkt. No. 7. Sprint answered on December 20, 2017. Dkt. No. 14.

#### 2.   Discovery

The parties engaged in extensive discovery. Plaintiffs propounded several sets of written discovery, including Interrogatories (7 sets), Requests for Production (3 sets), and Requests for Admission (2 sets). Haines Decl., ¶ 5. The parties met and conferred several times over Sprint's responses, which resulted in multiple supplemental productions by Sprint. *Id.* In total, Sprint produced more than 7,000 pages of documents, including spreadsheets containing thousands of

lines of data reflecting the amounts deducted under the SPS Adjustment program for each affected employee in each month, employees' final rates of pay, and other data. *Id*. Plaintiffs also produced nearly 800 pages of documents in response to Sprint's discovery requests. *Id*. On August 29, 2018, Plaintiffs took the deposition of Sprint's Fed. R. Civ. Proc. 30(b)(6) witness on 10 topics. *Id*., ¶ 6. Class Counsel also interviewed dozens of class members and secured 13 declarations in support of class certification, and spent considerable time consulting with Plaintiffs' retained expert in connection with Plaintiffs' class certification motion and damages study. *Id*.

On October 10, 2018, pursuant to a stipulation of the parties and Court order, Plaintiffs filed the operative Second Amended Complaint, which removed a theory of liability that Plaintiffs concluded was not viable under the prevailing case law.  Dkt. Nos. 25, 28-29.

### 3.     Class Certification

On October 11, 2018, Plaintiffs filed their Motion for Class Certification. Dkt. No. 31. Sprint filed its Opposition on November 1, 2018 (Dkt. No. 37), and Plaintiffs filed their Reply on November 15, 2018 (Dkt. No. 42). This Court held a hearing on the Motion on November 28, 2018. On December 18, 2018, this Court granted the Motion and certified the following classes:

- Class 1 (Unlawful Deductions – SPS Class): All current and former employees of Sprint who worked at Sprint's retail store location(s) in California and whose compensation was based in full or in part on incentive compensation (also called "commissions"), and whose commissions were reduced by a Sprint Promoter Score Adjustment, at any time from February 2016 to March 2017;
- Class 2 (Wage Statement Class):  All members of the Unlawful Deductions – SPS Class whose commissions were reduced by a Sprint Promoter Score Adjustment at any time from September 29, 2016 through March 2017; and
- Class 3 (Waiting Time Class):  All members of the Unlawful Deductions – SPS Class who separated their employment from Sprint at any time from February 2016 through the present.

*See* Dkt. Nos. 45 (granting class certification) & 51 (modifying Waiting Time Class definition).

### 4.     Mediation and Settlement

On February 28, 2019, the parties attended mediation with Jeffrey A. Ross, Esq., an experienced wage and hour class action mediator. Haines Decl., ¶ 9.  The case did not settle at mediation; however, Mr. Ross subsequently made a mediator's proposal that was ultimately accepted by the parties. *Id*. The parties worked over the following months to negotiate and finalize the Settlement Agreement that is now before the Court for preliminary approval. *Id*.

III.     **THE SETTLEMENT MERITS PRELIMINARY APPROVAL**

It is the policy of the federal courts to encourage settlement. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989).  Judicial approval of a class action settlement entails a two-step process: (1) an early (preliminary) review by the Court; and (2) a final review after notice has been distributed to the class members for their comment or objections. *See* Manual for Complex Litigation § 30.41 (3rd Ed. 1995).

A.     **The Settlement Is Fair, Reasonable, and Adequate**

To receive judicial approval, a proposed class action settlement must be "fair, reasonable, and adequate." *See* Fed. R. Civ. Proc. 23(e)(2).  In making this determination, a trial court may consider the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 963 (9th Cir. 2003).  Plaintiffs address each relevant factor below.[2]

1.     **The Strength of Plaintiffs' Case**

Plaintiffs contend their underlying claim for unlawful deductions was the strongest of their claims. As stated, the proposed Settlement will obtain a 100% recovery for Class Members of their underlying alleged unpaid wages, plus approximately two years of interest.

But this does not mean that Plaintiffs' underlying claim was without risk.  As Plaintiffs' counsel acknowledged at the class certification hearing, Plaintiffs are not aware of any controlling authority addressing the specific scenario involved in this case, where a pay plan includes a potential 10% hold-back of incentive compensation dependent on a store-wide metric.  Among other authority, Plaintiffs relied on *Davis v. Farmers Ins. Exch.*, 245 Cal.App.4th 1302 (2016), which held that California law generally prohibits wage deductions that are meant for the benefit

---

[2] As notice has not yet been given to Class Members, the eighth factor cannot be addressed at this time. Should the Court grant preliminary approval of the Settlement, such that notice is given to Class Members, Plaintiffs will address the eighth factor in their motion for final approval.

of the employer, as well as the *Hudgins* and *Sciborski* cases mentioned above, which held that deductions to commissions must relate to the sales that earned the commissions, and that an employer may not require employees to consent to unlawful deductions. However, Plaintiffs acknowledge that several cases have held that variations in commissions as a result of contractual terms of an agreed-upon pay plan are generally not unlawful under California law. *See*, *e.g.*, *Ralphs*, *Steinhebel*, and *Koehl* cases cited *supra*; *see also Nguyen v. Wells Fargo Bank*, No. 15-cv-5239-JCS, 2016 WL 5390245 at *16 (N.D. Cal. Sept. 26, 2016) (Spero, J.) (granting summary judgment to employer on unlawful deduction claim and finding that where "it is clear from the Comp Plans" that certain "adjustments" would be made to commissions, those adjustments were not unlawful deductions.). Thus, while Plaintiffs steadfastly believe that their underlying claim is meritorious, they nonetheless recognized a real risk that they and Class Members would end up receiving nothing if this Court agreed with Sprint on Plaintiffs' core theory of liability.

As to Plaintiffs' derivative penalty claims, Plaintiffs acknowledge those claims carried significantly greater challenges, which warranted discounting. For example, Plaintiffs' ability to recover waiting time penalties was highly speculative, as Plaintiffs would need to show that Sprint did not possess a "good faith defense" for its failure to pay the underlying wages at issue. Multiple California appellate cases have denied waiting time penalties even where the employee prevailed on their wage claims, particularly where the state of the law was not clear as to the underlying claims. *See*, *e.g.*, *Kao*, *supra,* 12 Cal.App.5th at 963 (reversing award of waiting time penalties for mis-classification claim because "good faith dispute" existed over employee's exempt status); *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1203-04 (2008) (denying waiting time penalties even though class prevailed on living wage claim, due to uncertainty surrounding employer's legal obligations under the living wage ordinance, finding that the employer's defenses "were not unreasonable or frivolous"); *Barnhill v. Robert Saunders & Co.*, 125 Cal.App.3d 1, 7-8 (1981) (reversing award of waiting time penalties, even though employee prevailed on underlying claim for unlawful "offsetting" of final wages to recoup employee debt, because "at the time the state of the law in that regard was not clear").

///

Similarly, with respect to Plaintiffs' claim for wage statement penalties and PAGA civil penalties, even if Plaintiffs prevailed on their underlying claim, there was substantial risk that the Court would deny wage statement penalties because the wage statements contained an accurate accounting of wages actually *paid* (*see Maldonado*, *supra*, 22 Cal.App.5th at 1336-37 (finding no entitlement to derivative wage statement penalties where "the pay stubs were accurate in that they correctly reflected the hours worked and the pay received…")); and/or that the Court would significantly reduce any PAGA civil penalties due to Sprint's good-faith defenses (*see*, *e.g.*, *Carrington*, *supra*, 30 Cal.App.5th at 529 (affirming PAGA civil penalty of just $5 per pay period in light of employer's "good faith attempts" to comply with the law)), as described above.

### 2.    Risk, Expense, and Duration of Further Litigation

As explained *supra*, while Plaintiffs believe their claims are meritorious, Plaintiffs' ability to prevail on their claims was far from guaranteed; there is a very real possibility that Sprint could have prevailed, leaving no recovery for the certified Classes.

Moreover, although Plaintiffs had obtained class certification and conducted extensive formal discovery, additional expense lay ahead if the case did not settle. For example, the parties intended on making cross-motions for summary judgment/adjudication, and Plaintiffs would still need to prepare for a possible trial and litigate potential appeals. As a result, Plaintiffs would incur considerably more attorneys' fees and expenses absent settlement. Indeed, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004); *see also, e.g., In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138-VRW, 2007 WL 4171201 at *3 (N.D. Cal. Nov. 26, 2007) (Walker, J.) (noting that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement"). Preliminary approval of the Settlement is warranted, as it avoids those risks and expenses.

### 3.    Risk of Maintaining Class Action Status

This Court had already certified all three of Plaintiffs' proposed Classes at the time this Settlement was reached. However, there was a risk that Sprint would move for decertification, or that the certification order would be reversed on appeal.  The Settlement avoids those risks.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

### 4.    Amount Offered in Settlement

The Settlement provides significant monetary recovery for Class Members when compared against what Class Members could have potentially recovered at trial:

#### a.    Underlying Unpaid Wages (Unlawful Deductions)

As explained in Plaintiffs' Motion for Class Certification, Sprint produced a spreadsheet in formal discovery that details the precise amounts that were deducted from Class Members' commissions as a result of the SPS Adjustment Program, from February 2016 (when the program was first implemented) through March 2017 (when the program ended). The total amount deducted as a result of the SPS Adjustment Program was $1,046,526.18. Haines Decl., ¶ 12. Plaintiffs' expert also calculated that interest on the SPS deductions through February 2019 was $237,266.73. *Id.*, ¶ 13. Thus, the total amount of underlying damages and interest that Plaintiffs could have hoped to achieve at trial was approximately $1,283,792.91. *Id.* As explained above, Plaintiffs faced significant obstacles in prevailing on this claim on the merits. Despite these challenges, Plaintiffs negotiated a settlement that will provide each Class Member a 100% reimbursement for all of these allegedly unlawful deductions ***plus*** two years' worth of interest.

#### b.    Waiting Time Penalties

With respect to waiting time penalties, Plaintiffs calculated the estimated maximum recovery by taking the final rate of pay for each member of the Waiting Time Class, multiplying it by 8 hours, and then multiplying that amount by 30 days to arrive at each Class Member's maximum waiting time penalty. Haines Decl., ¶ 15; *see also*, *e.g.*, *Hernandez v. Martinez*, No. 12-CV-06133-LHK, 2014 WL 3962647 at *13 (N.D. Cal. Aug. 13, 2014) ("multiplying [hourly rate] by eight (the hours of work in a day) to arrive at the daily wage is an acceptable method for calculating the daily wage for purposes of § 203.") Using this method, Plaintiffs calculated the maximum waiting time penalties for Waiting Time Class members at $5,531,836.19. *Id.* As described above, however, significant risk attached to this claim given that Sprint put forth several "good faith defenses" that it contends would preclude waiting time penalties under the prevailing case law. *See Kao*, *Amaral*, *Barnhill* cases cited *supra*.

///

---

10

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

### c.        Wage Statement Penalties

Plaintiffs allege that for each pay period in which a Wage Statement Class Member experienced a deduction from wages, Sprint is liable for wage statement penalties in the amount of $50 for each "initial" violation per employee and $100 for each "subsequent" violation per employee.  Using this method, which was detailed in Plaintiffs' expert's report accompanying the Class Certification Motion, Plaintiffs calculated a total of $541,050 in potential wage statement penalties. *See* Dkt. No. 31-3, Expert Report of J. Michael DuMond, Ph.D. and Exh. B.

Sprint, however, contends that Plaintiffs' calculation is inflated, because Plaintiffs would only be able to recover, at most, $50 per pay period, since Sprint had not yet been informed by a court or the Labor Commissioner that any Labor Code violation had occurred. *See Amaral*, *supra*, 163 Cal.App.4th at 1207 (holding "initial" violation rate applies to PAGA penalties until employer is notified it violated Labor Code); *Patel v. Nike Retail Svcs., Inc.*, 58 F.Supp.3d 1032, 1042-43 (N.D. Cal. 2014) (citing *Amaral* and applying "initial" $50 penalty to all pay periods in calculating amount-in-controversy for wage statement claim). Thus, according to Sprint, the most Plaintiffs could have recovered on this claim was $326,500 (6,530 affected pay periods * $50).

As explained above, regardless of how potential penalties are calculated, Plaintiffs faced significant risk of not recovering *anything* on this derivative claim, given that Sprint's wage statements always accurately reported the amount *paid* to its employees. *Maldonado*, *supra,* 22 Cal.App.5th at 1336-37 (finding no entitlement to derivative wage statement penalties where "the pay stubs were accurate in that they correctly reflected the hours worked and the pay received…").

### d.        PAGA Civil Penalties

Plaintiffs calculated potential PAGA civil penalties of $653,000, based on $100 per pay period under Labor Code § 2699(f) for each of the 6,530 pay periods during the PAGA liability period (September 2016 through March 2017). Haines Decl., ¶ 17; *Amaral*, 163 Cal.App.4th at 1207 (holding "initial" violation rate applies in calculating PAGA civil penalties until employer is notified it has violated the Labor Code). However, there was significant risk the Court would use its discretion to reduce PAGA civil penalties given Sprint's good-faith defenses. As explained *supra*, courts have reduced PAGA civil penalties drastically based on such considerations.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

Based on the above, Plaintiffs estimated the maximum potential recovery for the Classes at trial would be between $7,795,129.10 and $8,009,679.10 (depending on how wage statement penalties are computed). Thus, the Gross Settlement Fund of $4,000,000.00 equals between 49.9% and 51.3% of the "full verdict value" of Plaintiffs' claims, including 100% reimbursement of the underlying unpaid wages at issue, plus interest; plus over $1.4 million paid directly to Class Members for derivative wage statement, waiting time, and PAGA penalties.

Plaintiffs submit this is an excellent result in light of the numerous and significant challenges Plaintiffs faced on their claims, described *supra*. This result also compares favorably with results achieved in analogous settlements, including those approved by this Court. *See*, *e.g.*, *Richardson v. Interstate Hotels & Resorts, Inc.*, No. C-16-cv-6772-WHA, 2019 WL 803746 at *3 (N.D. Cal. Feb. 21, 2019) (Alsup, J.) (approving $800,000 wage and hour class action settlement amounting to 19.2% of full potential damages); *Saechao v. Landry's, Inc.*, No. 3:15-cv-815-WHA (N.D. Cal. Aug. 19, 2016) (Alsup, J.) (approving $500,000 wage and hour class action settlement which "represent[ed] approximately one third of the total available recovery if the case proceeded to trial (before deductions for any fees or costs)"); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL 3776765 (N.D. Cal. June 17, 2015) (Gilliam, J.) (approving $715,000 wage and hour class action settlement amounting to 10% of estimate of full verdict value); *Deaver v. Compass Bank*, No. 13-cv-00222-JSC, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) (Corley, J.) (approving $500,000 wage and hour class action settlement amounting to 10.7% of total potential exposure); *Dunleavy v. Nadler*, 213 F.3d 454, 459 (9th Cir. 2000) (approving settlement which represented "roughly one-sixth of the potential recovery").

### 5.   Discovery Completed and the Status of Proceedings

As discussed above, Plaintiffs had conducted extensive discovery, including a damages study with the assistance of their expert economist, and the Court had granted class certification of all three Classes. Plaintiffs intended to move for summary adjudication on liability and damages using their expert's damages study. These calculations form the basis of the settlement distribution formula set forth in Section 3.1 of the Settlement. Thus, Plaintiffs possessed sufficient discovery and information to negotiate a fair, reasonable, and adequate settlement.

### 6.   The Experience and Views of Counsel

Parties represented by competent counsel are in the best position to produce a settlement that fairly reflects each party's expected outcome in litigation. *See, e.g., In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th Cir. 1995). Plaintiffs are represented by experienced wage and hour class action counsel who have certified numerous class actions over contested motions, and who have been appointed class counsel in over 100 class action settlements. *See* Haines Decl., ¶¶ 2-3. This factor supports preliminary approval. *See, e.g., Gribble v. Cool Transports Inc.*, No. CV 06-04863 GAF SHx, 2008 WL 5281665 at *9 (C.D. Cal. Dec. 15, 2008) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

### 7.   Presence of Government Participant

Because the Settlement resolves Plaintiffs' claims under PAGA, the Settlement must be submitted to the LWDA at the same time it is submitted to the Court. Labor Code § 2699(l)(2). Class Counsel will be submitting a copy of the Settlement Agreement at the same time that the Settlement is submitted to the Court through this Motion. Haines Decl., ¶ 26.

### B.   The Preliminary Approval Standard Is Met

At this stage, the Court can grant preliminary approval of the Settlement and direct that notice be given if the proposed settlement (1) falls within the range of possible approval; (2) appears to be the product of serious, informed and non-collusive negotiations; and (3) has no obvious deficiencies. *See Manual for Complex Litigation* (3d ed. 1995) § 30.41; Newberg et al., *Newberg on Class Actions* (4th ed. 2013) § 11:24-25. The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *See Class Plaintiffs v. Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992).

### 1.   The Settlement is Within the Range of Possible Approval

As explained in detail above, the Settlement is well within the range of possible approval, as it achieves a substantial recovery (including 100% reimbursement of the underlying unpaid wages at issue) in light of real litigation risks on the merits. Plaintiffs submit that the Settlement represents an excellent result, such that notice should be provided to Class Members so they may

consider the settlement. The Court will have the opportunity to again assess the reasonableness of the settlement at the final approval stage, after Class Members have had the opportunity to opt-out or object.

### 2. The Settlement Resulted from Serious, Informed, and Non-Collusive Negotiations

This Settlement is the result of hard-fought litigation and extensive arm's-length negotiations by counsel and is, therefore, entitled to an initial presumption of fairness. *See In re First Capital Holdings Corp. Financial Products*, MDL No. 901, 1992 WL 226321 at *2 (C.D. Cal. June 10, 1992) ("Approval of the settlement is discretionary with the court, but there is typically an initial presumption of fairness where the settlement was negotiated at arm's length."). As discussed above, this case was litigated through class certification, and Plaintiffs engaged in extensive formal written and deposition discovery, including a damages study by Plaintiffs' engaged expert who holds a Ph.D. in economics. This case also involved mediation before Jeffrey A. Ross, an experienced and well-respected wage and hour mediator, and months of post-mediation negotiations to arrive at the Settlement now before the Court.

### 3. The Settlement is Devoid of Obvious Deficiencies

#### a. The Settlement Provides Significant Monetary Payments

If this Court approves the Settlement, Sprint will pay a <u>non-reversionary</u> Gross Settlement Fund of $4,000,000. No Class Member will need to submit a claim form in order to reap financial benefit from the Settlement. Moreover, Sprint will pay its corporate payroll tax obligations separate from, and in addition to, the Gross Settlement Fund. *See* Settlement, ¶ 2.18. The principal terms of the proposed Settlement are summarized below:

| | |
|---|---|
| Gross Settlement Fund: | $4,000,000 |
| Minus Court-approved attorney's fees (up to 25%): | $1,000,000 |
| Minus Court-approved costs (up to): | $50,000 |
| Minus Court-approved incentive payments: | $8,000 |
| Minus amount designated as PAGA penalties: | $300,000 |
| <u>Minus settlement administration costs (up to):</u> | <u>$20,000</u> |
| Net Settlement Fund: | $2,622,000 |
| PLUS "PAGA Payment" (25% of PAGA penalties): | $75,000 |
| **Total Amount Paid to Class Members:** | **$2,697,000** |

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

After deducting requested amounts for attorney fees and costs, incentive payments, PAGA payment to LWDA, and administration costs, the Settlement provides for at least $2,697,000 be paid directly to Class Members.  There are 2,290 Class Members.  *See* Settlement, ¶ 1.3. Thus, the average payments to Class Members is estimated to be *at least* $1,177.73.

As stated, Class Members will receive a 100%, dollar-for-dollar reimbursement of all amounts deducted from their commissions as part of the SPS Adjustment Program, plus interest. *See* Settlement, ¶ 3.1(e)(i)-(ii). In addition, members of the Waiting Time Class will receive at least $1,204,386.38 for waiting time penalties, with each Waiting Time Class Member's allocation calculated *pro rata* based on their final hourly rate of pay; members of the Wage Statement Class will receive at least $133,820.71 for wage statement penalties, based on their *pro rate* number of months between September 2016 and March 2017 in which they experienced an SPS Deduction ("Affected Months"); and Class Members will receive $75,000 in PAGA civil penalties, distributed *pro rata* based on their proportional number of Affected Months. *Id.*, ¶¶ 3.1(c), 3.1(e)(iii).

Comparing this Settlement to a prior settlement handled by Class Counsel, *Gooding v. Vita-Mix Corp.*, No. 2:16-cv-3898-ODW (C.D. Cal.), further underscores why this Settlement provides an excellent result for the Class. *Gooding* was finally approved by Judge Otis Wright II of the Central District, who described the *Gooding* settlement as "one of the best settlements I have ever seen." *See* Haines Decl., Exh. 3 at 6:9. Like this case, *Gooding* involved a claim for unlawful deductions. However, *Gooding* also involved underlying claims for unpaid overtime, unpaid minimum wages, meal period violations, and rest periods violations (as well as derivative waiting time, wage statement, and PAGA penalties). As can be seen from the chart below, the instant Settlement compares favorably to the *Gooding* settlement, in that the average payment here is slightly higher than in *Gooding* even though *Gooding* alleged – and the *Gooding* settlement released – a litany of wage and hour claims that were not alleged in this case (chart begins on following page):

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

|  | *Gooding v. Vita-Mix* | *Caudle v. Sprint (This Case)* |
|---|---|---|
| **Underlying Claims** | Minimum Wage, Overtime, Meal Periods, Rest Periods, Unlawful Deductions | Unlawful Deductions |
| **Total Settlement Fund** | $1,600,000.00 | $4,000,000.00 |
| **Total Class Members** | 1,055 | 2,290 |
| **Total Class Members to Whom Notice Was Sent** | 1,055 | 2,290 |
| **Method(s) of Notice** | Mail and/or e-mail | First-Class Mail |
| **Number/percentage of claim forms submitted** | 939 participating Class Members (89%) (including 855 Rule 23 Members and 97 FLSA Opt-Ins) | N/A (no claim form required) |
| **Avg. recovery** | $1,155.46 | $1,177.73 |
| **Amounts distributed to *cy pres* recipient(s)** | $28,902.55 to Bet Tzedek; $28,902.55 to Public Justice | N/A (uncashed funds go to Unclaimed Property Fund) |
| **Administrative costs** | $20,000 | $20,000 (up to) |
| **Attorneys' fees and costs** | $400,000 fees (25%); ~$12,000 costs | $1,000,000 fees (25%); $50,000 costs (up to) |

### b.    The Other Terms of the Settlement Are Reasonable

The other terms of the Settlement are also fair, adequate, and reasonable, and the parties have attempted to comply with the Northern District Procedural Guidance for Class Action Settlements as well as this Court's Order Re Proposed Class Settlement (Dkt. No. 19):

- The class definition in the Settlement matches up with the definition of the Classes certified by the Court.  *See* Settlement, ¶ 2.5 (defining "Class" as all people who are members of the classes certified by the Court).
- There is no reversion to Sprint.  *Id.*, ¶ 2.2 (Gross Settlement Fund is "non-reversionary").
- The release of claims is tied to the claims certified for class treatment (*see id.*, ¶¶ 4.3, 4.4), the only exception being the release of waiting time penalties, which will release any claim for waiting time penalties irrespective of the nature of the underlying unpaid wages, in recognition of the fact that California law generally provides for only one waiting time penalty per employee. (*See* Labor Code § 203 (establishing "a penalty" if employer "willfully fails to pay…*any wages* of an employee who is discharged or quits") (emphasis added); *Reyes v. CVS Pharmacy, Inc.*, No. 1:14-cv-964-MJS, 2016 WL 3549260 at *9 (E.D. Cal. Jun. 29, 2016) ("Labor Code section 203 provides penalties for the failure to pay any and all wages owed upon termination; multiple awards do not accrue for multiple violations."))
- The envelope containing the Class Notice will contain language in bold and all-caps designed to increase the chance of it being opened.  *See* Settlement, ¶ 6.2.
- Sprint will provide CAFA notice to the appropriate government officials within 10 days of this Motion being filed. *Id.*, ¶ 6.8; 28 U.S.C. § 1715(b).
- There is no claim procedure; all Class Members will automatically receive a payment unless they affirmatively opt-out. *See* Settlement, ¶ 6.4 (unless a Class Member opts out of the Settlement, they will be mailed a Settlement Payment).

16

        **c.**       **Incentive Payments, Attorneys' Fees, Costs, and Payment to LWDA**

The proposed incentive payments to Plaintiffs – $5,000 to Plaintiff Caudle and $3,000 to Plaintiff White – are also reasonable. These modest payments are to recognize Plaintiffs' significant contributions to this case by way of, *inter alia*, locating witnesses, providing documents and information, conducting research, and otherwise assisting in prosecuting this litigation, as well as their general release of claims.

As will be fully briefed at final approval, Plaintiffs' requested incentive payments are intended to recognize the time and effort Plaintiffs have expended on behalf of the Class, as well as the substantial risks they undertook in stepping forward as named plaintiffs in a wage and hour class action against a former employer. The Ninth Circuit has recognized that incentive awards are particularly appropriate in wage and hour class actions, where plaintiffs undertake a significant "reputational risk" by bringing suit against a former employer. *Rodriguez,* 563 F.3d at 958-59. "Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable." *Bravo v. Gale Triangle, Inc.*, Case No. CV 16-3347 BRO (GJSx), 2017 WL 708766 at *19 (C.D. Cal. Feb. 16, 2017); *see also Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau*, No. C-07-362-MHP, 2009 WL 3562871 at *5 (N.D. Cal. Oct. 27, 2009) (Patel, J.) (noting that $5,000 incentive payment is "presumptively reasonable" in the Northern District and ultimately awarding $7,500). Moreover, the *combined* requested incentive payments ($8,000) constitute just 0.2% of the $4,000,000 common fund, further demonstrating their reasonableness. *See, e.g., Ross v. U.S. Bank Nat'l Ass'n*, No. C 07-2951 SI, 2010 WL 3833922 at *3 (N.D. Cal. Sept. 29, 2010) (Illston, J.) (approving award of $20,000 to each of four named plaintiffs from $1,050,000 settlement fund).

Class Counsel will also file a separate motion for approval of attorneys' fees not to exceed the Ninth Circuit "benchmark" of 25% of the Gross Settlement Fund (i.e., $1,000,000), for all past and future attorneys' fees necessary to prosecute, settle and administer the litigation and the proposed Settlement, and for litigation costs not to exceed $50,000. *See* Settlement, ¶ 3.1(a); *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (in the Ninth Circuit, a 25% award is the "benchmark" amount of attorneys' fees).

Plaintiffs will submit information regarding the time spent by counsel on this case with their motion for attorneys' fees to be filed at least 35 days prior to the opt-out/objection deadline. However, the table below includes a summary of Class Counsel's billing rates and hours worked to date and shows that, based on Class Counsel's current lodestar, the fees incurred on the case would result in a modest 2.69 multiplier when compared with the 25% fee request. Of course, this does not include the time that Class Counsel will incur in, *inter alia*, (i) preparing for and appearing at the preliminary approval hearing, (ii) supervising the Notice process, (iii) preparing the final approval papers, (iv) preparing for and appearing at the final approval hearing, and (v) supervising the distribution process.

| Name | Rate | Hours | Pre-Multiplier Lodestar |
|------|------|-------|--------------------------|
| Paul K. Haines (13th Year Attorney) | $650 | 183.3 | $119,145.00 |
| Tuvia Korobkin (10th Year Attorney) | $550 | 288.6 | $158,730.00 |
| Stacey M. Shim (4th Year Attorney) | $375 | 180.7 | $67,762.50 |
| Jamin Xu (1st Year Attorney) | $325 | 71.1 | $23,107.50 |
| Paralegals | $175 | 14.4 | $2,520.00 |
| **Total Lodestar** | | | **$371,265.00** |

Finally, the Settlement provides for a $225,000 payment to the LWDA, in accordance with PAGA's requirement that 75% of civil penalties be distributed to the LWDA. Labor Code § 2699(i). This allocation to the LWDA for PAGA civil penalties is reasonable. *See, e.g.*, *Lazarin v. Pro Unlimited, Inc.*, No. C11-3609-HRL, 2013 WL 3541217 (N.D. Cal. 2013) (Lloyd, J.) (approving $7,500 LWDA payment out of $1.25 million settlement); *Chu v. Wells Fargo Inv., LLC*, No. C 05-4526-MHP, 2011 WL 672645 at *1 (N.D. Cal. Feb. 16, 2011) (Patel, J.) (approving $7,500 payment to LWDA out of $6.9 million settlement).

In sum, because the proposed settlement is devoid of obvious deficiencies, this factor also supports preliminary approval.

///

///

///

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

## IV.   THE PROPOSED NOTICE PROCESS SATISFIES DUE PROCESS

Due process requires that notice be provided to class members by the best reasonable method available. *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974).  Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).  Here, Plaintiffs propose that the settlement be administered by Simpluris, Inc. ("Simpluris"), an experienced class action settlement administrator, which will distribute the proposed Class Notice to the Class Members by First-Class U.S. Mail. *See* Declaration of Jessica Bitterman and attached exhibits.

Class Counsel estimate that they have handled approximately 100 class action settlements in the last four years, and have engaged several different administrators, including CPT Group, Inc. ("CPT"); Dahl Administration, LLC; ILYM Group, Inc.; Phoenix Settlement Administration; Rust Consulting, Inc.; and Simpluris. Class Counsel estimate that they have retained Simpluris as the administrator in approximately 10% of those settlements, including in complex cases involving Rule 23 opt-out classes and/or FLSA opt-in classes. *See* Haines Decl., ¶ 23. In this case, Class Counsel solicited settlement administration bids from CPT, Atticus Administration, and Simpluris. *Id*. Of those three proposals, Simpluris' was the most competitive. *Id*.

The proposed Class Notice advises Class Members of the key terms of the Settlement and the 60-day deadline to opt-out, file a dispute, or file an objection, and also provides a summary of the alleged claims, explains the recovery formula and expected recovery amount for each Class Member, provides contact information for Class Counsel, provides the address for the settlement website, and provides the date of the final approval hearing. *See* Haines Decl., Exh. A to Exh. 1.

## V.   CONCLUSION

For the reasons discussed herein, Plaintiffs respectfully request that the Court grant this Motion for Preliminary Approval.

Dated:  May 16, 2019

Respectfully Submitted,
HAINES LAW GROUP, APC

By:  ___*/s/ Paul K. Haines*___
Paul K. Haines, Esq.
Attorneys for Plaintiffs, the Classes
and Aggrieved Employees

19

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL