IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOSHUA CAUDLE and KRYSTLE WHITE, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

SPRINT/UNITED MANAGEMENT COMPANY, a Kansas corporation; and DOES 1 through 100,

    Defendant.

No. C 17-06874 WHA

**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

## INTRODUCTION

In this wage-and-hour class action, plaintiffs move for preliminary approval of a class settlement agreement. For the reasons stated below, the motion is **GRANTED**, reserving on final approval and on any incentive award, attorney's fees, and costs later.

## STATEMENT

The background of this action has been set forth in a prior order and needs not be discussed in detail herein (*see* Dkt. No. 45). In brief, defendant Sprint/United Management Company sells mobile phone devices and services to retail customers. In February 2016, Sprint instituted a redesigned incentive compensation plan called the Sprint Promoter Score Adjustment program, which remained in effect until March 2017. This program allegedly made an unlawful 10% "across-the-board deduction" from employees' individually earned commission based on

factors outside the individual employees' control and unrelated to the individual employees' efforts regarding a particular sale or transaction.

Plaintiffs Joshua Caudle and Krystle White — a former store manager and former lead retail consultant, respectively — worked in various northern California Sprint retail store locations. They brought the instant action in November 2017, asserting various claims arising out of the Sprint Promoter Score Adjustment program for alleged unlawful deductions from employees' wages under California Labor Code Sections 221–23.

An order dated December 18, 2018, certified three classes relating to the deductions made under the Sprint Promoter Score Adjustment program (Dkt. No. 45 at 11–12). The first class was directly based on Sprint's policy at issue (*i.e.*, the Sprint Promoter Score Adjustment program). The other two certified classes — the wage statement and waiting time classes — are derivative of the first class. Both Joshua Caudle and Krystle White were appointed as class representatives (*id*. at 12). Following class certification, the parties reached a settlement by ultimately accepting a mediator's proposal (Dkt. No. 63-1 ¶ 9).

Plaintiffs now move for preliminary approval of the settlement agreement. This order follows a brief from plaintiffs, a statement of non-opposition from defendant, and oral argument.

**ANALYSIS**

"A settlement should be approved if 'it is fundamentally fair, adequate and reasonable.' " *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (citation omitted). Preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (Chief Judge Vaughn Walker). Here, the proposed settlement agreement satisfies these requirements.

1. **PROPOSED SETTLEMENT.**

Under the proposed settlement, the key terms would be as follows:

***Net Settlement Fund***: The net settlement fund would be $4,000,000 minus attorney's fees and costs, incentive payments, administrative expenses, and payment to the Labor & Workforce Development Agency ("LWDA") for civil penalties under the Labor Code Private Attorneys General Act ("PAGA") (Dkt. No. 63 at 1), equaling to an estimated $2,622,000 (Dkt. No. 67-1 ¶¶ 3.1, 3.1(e)). The fund would be composed as follows.

1. ***Incentive Award***: Caudle and White plan to request an incentive award of $5,000 and $3,000, respectively, for a total of $8,000. The settlement agreement, however, is not contingent on approval of the incentive award (*id*. ¶ 3.1(b)).

2. ***Attorney's Fees and Costs***: Class counsel plan to request an award of attorney's fees of $1,000,000 and costs of $50,000. Any unapproved portion of the request for fees and costs would be added to the net settlement fund and distributed to the class on a *pro rata* basis. The settlement agreement is not contingent on the approval of the requested attorney's fees and costs award (*id*. ¶ 3.1(a)).

3. ***PAGA Allocation***: $300,000 would be paid to settle claims for potential penalties under PAGA. In accordance with PAGA, 75% of this amount ($225,000) would be paid to the California Labor and Workforce Development Agency and 25% ($75,000) to the class members as part of the *pro rata* distribution (*id*. ¶ 3.1(c)).

4. ***Administration Costs***: $20,000 will be set aside from the gross settlement to cover the cost of administering class notice. Any unused amount would be added to the net settlement fund (*id*. ¶ 3.1(d)).

5. ***Allocation to the Class Members***: Following the above deductions, the net settlement fund amounts to $2,622,000. The following distributions would be made with respect to the 2,290 class members:

    a. Each class member would receive a 100 percent reimbursement of all amounts deducted from their commissions under the

                Sprint Promoter Score Adjustment program, plus interest (*id*. ¶

                3.1(e)(i)–(ii)).

      b.    The wage-statement class would receive $133,820.71 for wage-statement penalties, distributed *pro rata* to each member based on their final hourly pay (Dkt. No. 63 at 15).

      c.    The waiting-time class would receive $1,204,386.38 for waiting-time penalties, distributed *pro rata* to each member based on the number of months between September 2016 and March 2017 that they incurred the deductions at issue (*ibid*.).

      d.    Class members would receive $75,000 in PAGA civil penalties, distributed *pro rata* based on the number of months they incurred the deductions at issue (Dkt. No. 67-1 ¶ 3.1(c)).

6. ***No Reversion***: There would be no reversion to defendant.

**2.    COST/BENEFIT TO THE ABSENT CLASS MEMBERS.**

Assuming all of the above deductions are finally approved in the amount specified, the average net allocation to each class member would be $1,177.73 (Dkt. No. 63 at 15).

According to plaintiffs and their expert, a total of $1,046,526.18 was deducted as a result of the Sprint Promoter Score Adjustment program, with an additional total of $237,266.73 relating to two-years' worth of interest on the deductions (Dkt. No. 63-1 ¶¶ 12–13). As for the waiting time penalties, plaintiffs multiplied the final rate of pay for each member of this derivative class by eight hours, then multiplied that amount by thirty days to find a total of $5,531,836.19 in waiting time penalties (*id*. ¶ 15). As for the wage statement penalties, plaintiffs calculated a maximum total of $541,050 in potential wage statement penalties (Dkt. Nos. 31-1, Exh B; 63 at 11). Additional penalties under PAGA could have resulted in a maximum amount of $653,000 (although that amount could be reduced at the district court's discretion), with 75% of the PAGA penalties allocated to the California Labor and Workforce Development Agency (Dkt. No. 63 at 11). Thus, the total maximum recovery at trial is approximately $8,009,679.10, and the settlement of $4,000,000 represents roughly one half of the available recovery (*id*. at 12).

4

Plaintiffs contend that this discount is warranted in light of the litigation risks and where each class member would receive full reimbursement plus interest of the underlying unpaid wages at issue (*ibid.*).

Plaintiffs' unlawful deduction claim turns on the theory that the Sprint Promoter Score Adjustment program unlawfully withheld 10% of each class members' incentive compensation based on a store-wide metric (*id.* at 7). Plaintiffs, however, are unaware of any controlling authority that addresses the specific facts at issue in the instant action. Moreover, defendant points to decisions that have held that variations in commissions resulting from contractual terms of an agreed-upon pay plan are generally lawful under California law. *See, e.g.*, *Nguyen v. Wells Fargo Bank*, No. C 15-5239 JCS, 2016 WL 5390245, *16 (N.D. Cal. Sept. 26, 2016) (Magistrate Judge Joseph Spero). As such, there is significant uncertainty in the strength of plaintiffs' claim.

The strength in plaintiffs' derivative penalty claims carry even greater uncertainty. The waiting-time penalty claim faces a "good faith defense" against the failure to pay the underlying wages at issue where the state of the law is unclear (Dkt. No. 63 at 8). *See, e.g.*, *Kao v. Joy Holiday*, 12 Cal. App. 5th 947, 963 (2017) ("A good faith dispute that any wages are due will preclude imposition of waiting time penalties under Labor Code Section 203." (citation and alterations omitted)). The wage-statement penalties and PAGA civil penalties also carries significant uncertainty. There is a substantial risk that plaintiffs' wage-statement penalties would be denied because the wage statements contained an accurate accounting of wages actually paid to each employee, even assuming that the employees were unlawfully underpaid. *See Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308, 1337 (2018) ("The purpose of section 226 is to '*document* the *paid wages* to ensure the employee is fully informed regarding the calculation of those wages.' . . . The purpose of requiring greater wage stub information is to insure that employees are adequately informed of compensation received and are not shortchanged by their employers" (quoting *Soto v. Motel 6 Operating, L.P.*, 4 Cal. App. 5th 385, 392 (2016) (internal citation and quotation marks omitted)). And, there is the risk that the PAGA civil penalties will be reduced due to defendant's good faith defenses.

These risks sufficiently balance the benefit of a substantial cash payout of an average of $1,177.73 for the class (particularly given that each class member would fully recover the underlying unpaid wages plus interest), at least enough to warrant preliminary approval and an opportunity for comment from the class members.

### 3. SCOPE OF THE RELEASE.

As background, the certified claims included the following (Dkt. No. 67-1 ¶ 1.4):

> Class 1 (Unlawful Deductions – SPS Class): All current and former employees of Sprint who worked at Sprint's retail store location(s) in California and whose compensation was based in full or in part on incentive compensation (also called "commissions"), and whose commissions were reduced by a Sprint Promoter Score Adjustment, at any time from February 2016 to March 2017.
>
> Class 2 (Wage Statement Class): All members of the Unlawful Deductions – SPS Class whose commissions were reduced by a Sprint Promoter Score Adjustment at any time from September 29, 2016 through March 2017.
>
> Class 3 (Waiting Time Class): All members of the Unlawful Deductions – SPS Class who separated their employment from Sprint at any time from February 2016 through the present.

The proposed scope of the release is as follows (Dkt. No. 67-1 ¶¶ 4.3–4.4):

> 4.3. Release of All Settled Claims. As of the Effective Date and to the maximum extent permitted by law, the Plaintiffs, and all Participating Class Members (i.e., all Class Members who do not properly opt-out) and all persons purporting to act on the Participating Class Members' behalf or purporting to assert a claim under or through them, hereby do and shall be deemed to have fully, finally, and forever released, settled, compromised, relinquished and discharged any and all of the Released Parties of and from any and all claims, judgments, liens, losses, debts, rights, liabilities, demands, guarantees, penalties, costs, expenses, attorneys' fees, damages, indemnities, actions, suits, complaints, petitions, causes of action, and obligations of every kind and nature in law, equity or otherwise, known or unknown, suspected or unsuspected, disclosed or undisclosed, contingent or accrued, from the beginning of time through the Effective Date for all claims that were certified for class treatment, including claims for (1) unlawful deductions from wages (Cal. Labor Code §§ 221-223), (2) failure to furnish accurate itemized wage statements (Cal. Labor Code § 226), (3) failure to pay wages due to discharged employees (Cal. Labor Code §§ 201-203), and (4) unfair and unlawful business practices based on the above claims (Cal. Bus. & Prof. Code §§ 17200 et seq.), involving any conduct by any Released Party that arose during the Settlement Period. In addition to the foregoing, in recognition of the fact that they are receiving a larger payment, those Participating Class Members who are members of the Waiting Time Class, shall also release any claim for failure to pay waiting time penalties under Labor Code §203 (and any claims under Bus. & Prof. Code § 17200 et seq. based thereon) as to any wages allegedly unpaid at

> the time of that individual's termination during the Settlement Period, irrespective of the nature of the underlying unpaid wages. Whether such release is effective as to any claim for waiting time penalties under Labor Code § 203 in any context other than the underlying claims certified for class treatment in this Action, shall be determined in any such case by the court or other tribunal of competent jurisdiction in that case. All such disputes, claims, and/or causes of action, as described in this paragraph, are collectively referred to as the "Released Claims" or "Settled Claims."
>
> 4.4 <u>Release of PAGA Claims</u>. Upon the Court's approval of the PAGA Payment and this release of PAGA Claims, Plaintiffs and the Participating Class Members and all persons purporting to act on the Participating Class Members' behalf or purporting to assert a claim under or through them, hereby do and shall be deemed to have fully, finally, and forever released, settled, compromised, relinquished and discharged any and all of the Released Parties of and from any and all PAGA claims premised in whole or in part on any of the claims set forth in Paragraph 4.3 above (collectively, the "PAGA Claims"), based on the claims certified for class treatment.

In short, the settlement agreement only releases the certified claims for unpaid wages and derivative wage statement and PAGA penalties for the same violation (*see also id*. ¶¶ 1.4, 2.5). The derivative waiting time penalty claim, however, would be released "irrespective of the nature of the underlying unpaid wages, in recognition of the fact that California law generally provides for only one waiting time penalty per employee" (Dkt. No. 63 at 16). Plaintiffs explain the exception for the waiting time penalty claim release is proper because Section 203 of the California Labor Code provides a waiting time penalty where an employer "willfully fails to pay . . . *any wages* of an employee who is discharged or who quits." Cal. Lab. Code § 203 (emphasis added); *see also Reyes v. CVS Pharmacy, Inc.*, No. C 14-00964 MJS, 2016 WL 3549260, at *9 (E.D. Cal. June 29, 2016) (Judge Michael Seng) (noting that former employees "would not be entitled to additional waiting time penalties, as Labor Code section 203 provides penalties for the failure to pay any and all wages owed upon termination; multiple awards do not accrue for multiple violations"). The effectiveness of that release as to the waiting time penalties, however, would be "determined in any such case by the court or other tribunal of competent jurisdiction in that case" (Dkt. No. 67-1 ¶ 4.3).

Additionally, named plaintiffs, solely on their own behalf and not on behalf of any other class member, would fully generally release all claims, known and unknown, that they have or

7

may have against defendant as of the date they executed the settlement agreement in consideration for the incentive award (Dkt. No. 67-1 ¶ 4.7).

This order holds the proposed scope of the release for the absent class members is appropriately limited to the claims held appropriate for class treatment, with the addition of related claims for waiting time (to the foregoing extent), wage statement, and PAGA penalties.

**4. INCENTIVE PAYMENT, ATTORNEY'S FEES, AND COSTS.**

The settlement agreement contemplates $1,000,000 in attorney's fees (representing 25% of the gross settlement fund) and $50,000 in costs, and a total incentive payment of $8,000. While the prospect of these forthcoming requests does not prevent preliminary approval at this stage, the parties are advised that the requested amounts are subject to close scrutiny and potential reduction at the final approval stage.

In particular, and as cautioned in the Court's Notice and Order Regarding Factors to be Evaluated for Any Proposed Class Settlement, the request for an incentive award to the lead plaintiff is a "red flag" (Dkt. No. 19 at 5). While helpful that the settlement agreement is not conditioned on a specific incentive award amount, it does not automatically eliminate the risk that the proposed award might make a flawed or inadequate settlement more "palatable" to the lead plaintiff (Dkt. No. 25). Nonetheless, because the proposed settlement agreement does not provide for an automatic incentive award, no request for such an award has been made yet, and the settlement agreement is not contingent on the outcome of any such request, preliminary approval remains appropriate.

Plaintiffs must file a separate motion for those awards at the final approval stage on the schedule detailed below and in comport with the companion order (Order re Attorney's Fees and Costs).

**5. NOTICE AND SETTLEMENT ADMINISTRATION.**

The parties have agreed to a revised proposed form of notice (*see* Dkt. No. 67-3), which would be sent to the 2,290 class members via first-class mail, and skip traces will be performed on any notices returned as undeliverable (Dkt. No. 67-1 ¶¶ 1.3, 6.3, 6.3(b)–(c)). The notice procedure and the distribution of class funds is to be administered by Simpluris, Inc., and shall

not exceed $20,000 (*id*. ¶ 3.1(d)). The notice would state the formula used in calculating the individual payments and the share of the PAGA payment. Class members challenging their individual settlement or PAGA payment may produce documentary evidence to the settlement administrator (*id*. ¶ 6.3(e)). There will be no claim forms. Payments will be automatically mailed to class members upon final approval of the settlement (unless a class member affirmatively opts out) (*see id*. ¶ 6.4). The parties propose a sixty-day opt-out and objection period (*id*. ¶ 2.26).

The parties' proposed form of notice is hereby **APPROVED**. Simpluris is **APPROVED** as settlement administrator.

## CONCLUSION

Subject to final approval of the settlement and to the extent stated above, plaintiffs' motion for preliminary approval of the class settlement agreement is **GRANTED**. The proposed form of notice, to be administered by Simpluris, is also **APPROVED**. The final pretrial conference and trial dates, as well as other pending deadlines in this action, are hereby **VACATED**. The following dates are hereby set. Class notice shall be disseminated by **JULY 19**. The motion for attorney's fees and costs and incentive award is due by **AUGUST 16**. Objections by class members are due by **SEPTEMBER 13**. The motion for final approval of settlement agreement is due by **OCTOBER 15**. The final fairness hearing will be held on **NOVEMBER 14 AT 11 A.M.**

**IT IS SO ORDERED.**

Dated: June 28, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9