**HAINES LAW GROUP, APC**
Paul K. Haines (SBN 248226)
phaines@haineslawgroup.com
Tuvia Korobkin (SBN 268066)
tkorobkin@haineslawgroup.com
Stacey M. Shim (SBN 305911)
sshim@haineslawgroup.com
222 N. Sepulveda Blvd., Suite 1550
El Segundo, California 90245
Tel: (424) 292-2350
Fax: (424) 292-2355

Attorneys for Plaintiffs, the Certified Classes, and Aggrieved Employees

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA CAUDLE and KRYSTLE WHITE, as individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SPRINT/UNITED MANAGEMENT COMPANY, a Kansas Corporation; and DOES 1 through 100,<br><br>Defendants. | Case No.: 3:17-cv-06874-WHA<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge:    Hon. William Alsup<br>Date:     December 5, 2019<br>Time:    11:00 a.m.<br>Crtrm.:   12<br><br>Complaint Filed:  Sept. 29, 2017<br>FAC Filed:        Dec. 6, 2017<br>SAC Filed:       Oct. 10, 2018 |

NOTICE IS HEREBY GIVEN that on December 5, 2019 at 11:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 12 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable William Alsup, Plaintiffs Joshua Caudle and Krystle White ("Plaintiffs") and Class Counsel Haines Law Group, APC ("Class Counsel") will, and hereby do, move this Court for an order pursuant to Fed. R. Civ. Proc. 23(e):

1. Granting final approval to the class action settlement based upon the terms set forth in the Class Action Settlement Agreement and Release ("Settlement Agreement") as fair, reasonable and adequate under Rule 23(e) of the Federal Rules of Civil Procedure;
2. Overruling the sole objection to the Settlement Agreement; and
3. Entering final judgment in the form of the proposed Final Judgment and Order Granting Final Approval filed herewith.

This Motion is based upon this Notice; the attached Memorandum of Points and Authorities; the supporting Declarations of Jeremiah Kincannon of Simpluris, Inc. and exhibits attached thereto; the supporting Declaration of Heather Hamilton; the supporting Declaration of Paul K. Haines and exhibits attached thereto; the proposed Final Judgment and Order; the Settlement Agreement; all other pleadings, declarations, and other papers on file in this action; and any oral argument or other matter that may be considered by the Court.

Dated: November 7, 2019

Respectfully submitted,
HAINES LAW GROUP, APC

By: */s/ Paul K. Haines*
Paul K. Haines, Esq.
Attorneys for Plaintiffs, the Certified Classes, and Aggrieved Employees

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................. 1

II. PROCEDURAL HISTORY ................................................................................................. 2

III. THE SETTLEMENT WARRANTS FINAL APPROVAL.................................................. 3

   A. The Settlement Is Fair, Adequate, and Reasonable ......................................................... 3

      1. The Strength of Plaintiffs' Case ................................................................................. 3

      2. Risk, Expense, Complexity, and Duration of Further Litigation ................................ 5

      3. Risk of Maintaining Class Action Status ................................................................... 5

      4. Amount Offered in Settlement Is Reasonable Given the Realistic Value of Plaintiffs' Claims in Light of the Litigation Risks ...................................................................... 6

      5. Discovery Completed and the Status of Proceedings ................................................ 6

      6. The Experience and Views of Counsel ...................................................................... 6

      7. The Presence of a Governmental Participant ............................................................. 7

      8. The Reaction of the Class Members to the Proposed Settlement ............................... 7

IV. THE SOLE OBJECTION TO THE SETTLEMENT SHOULD BE OVERRULED ........... 8

   A. Scope of the Release ........................................................................................................ 9

      1. The Release is Tied to the Claims Certified for Class Treatment .............................. 9

      2. Yasin Lacks Standing to Challenge the Release of Waiting Time or Wage Statement Penalties, as Any Potential Claim He Might Have for Those Penalties Would Not Be Covered by the Release ............................................................................................ 11

   B. Allegedly Defective Notice ........................................................................................... 12

V. THE COURT-ORDERED NOTICE COMPORTS WITH DUE PROCESS ...................... 13

VI. CONCLUSION.................................................................................................................. 14

# TABLE OF AUTHORITIES

**Federal Cases**

*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004) .............................. 13
*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974) ................................................................. 13
*In re Heritage Bond Litig.*, 546 F.3d 667 (9th Cir. 2008) ............................................................. 3
*In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995). ................................................ 6, 7
*In re Syncor ERISA litigation*, 516 F.3d 1095 (9th Cir. 2008) ..................................................... 3
*Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977) .................................................. 7
*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ............... 5, 7
*Rodriguez v. West Publishing Corp.*, 563 F.3d at 963 .................................................................. 3
*Torisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ................................................... 1

**State Cases**

*Carrington v. Starbucks Corp.*, 30 Cal.App.5th 504 (2018) ......................................................... 5
*Falk v. Children's Hosp. Los Angeles*, 237 Cal.App.4th 1454 (2015) ....................................... 11
*Kao v. Joy Holiday*, 12 Cal.App.5th 947 (2017) .......................................................................... 4
*Maldonado v. Epsilon Plastics, Inc.*, 22 Cal.App.5th 1308 (2018) .............................................. 4
*Pineda v. Bank of America, N.A.*, 50 Cal.4th 1389 at FN7 (2010) ............................................ 11
*Prachasaisoradej v. Ralphs Grocery Co.*, 42 Cal.4th 217 (2007) ................................................ 4

**Federal Statues & Rules**

Fed. R. Civ. P 23(e) ....................................................................................................................... 3

**State Statutes and Rules**

8 Cal. Code Regs. § 13520 ............................................................................................................ 4
Labor Code § 203 ........................................................................................................................ 10
Labor Code § 2699(e)(2) ............................................................................................................... 5

**Unpublished Cases**

*Echavez v. Abercrombie & Fitch Co., Inc.*
    No. CV 11-09754-GAF, 2017 WL 3669607 (C.D. Cal. Mar. 23, 2017) ............................ 7
*Gooding v. Vita-Mix Corp.*
    No. 2:16-cv-03898-ODW(JEMx), 2018 WL 571881 (C.D. Cal. Jan. 25, 2018) ............... 7
*In re Wells Fargo Loan Processor Overtime Pay Litig.*
    MDL Dkt. No. C-07-1841 (EMC), 2011 WL 3352460 (N.D. Cal. Aug. 2, 2011) ........ 4, 7
*Jordan v. NCI Group, Inc.*
    No. 16-701 JVS (SPx), 2018 WL 1409590 (C.D. Cal. Jan. 5, 2018) ................................ 7
*Nguyen v. Wells Fargo Bank*
    No. 15-CV-05239-JCS, 2016 WL 5390245 (N.D. Cal. Sept. 26, 2016) ........................... 4
*Reyes v. CVS Pharmacy, Inc.*
    No. C 14-00964 MJS, 2016 WL 3549260 (E.D. Cal. June 29, 2016) ............................ 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs Joshua Caudle and Krystle White ("Plaintiffs"), on behalf of the certified Classes, seek final approval of the class action settlement ("Settlement") entered into by Plaintiffs and Defendant Sprint/United Management Company ("Sprint"). The Settlement provides for a <u>non-reversionary</u> Gross Settlement Fund of $4,000,000.00 to settle claims of 2,286 Participating Class Members. The Settlement is the culmination of nearly two years of litigation, including comprehensive discovery regarding the merits of Plaintiffs' claims and calculation of precise potential damages for each Class Member, a contested motion for class certification that resulted in an order certifying all three classes that Plaintiffs sought to certify, as well as a full-day mediation and post-mediation negotiations.

In its June 28, 2019 Order Granting Preliminary Approval, this Court observed that "the proposed settlement satisfies these [approval] requirements," including that a settlement be "fundamentally fair, adequate, and reasonable." Dkt. No. 68 at p. 2 (citing *Torisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)). This court further held that "the proposed scope of the release for the absent class members is appropriately limited…" *Id.* at p. 8.

Since this Court granted preliminary approval, nothing has changed to impact the propriety of the Settlement. In fact, since notice of the Settlement was provided to Class Members, the response has been overwhelmingly positive, with only two Class Members electing to opt out of the Settlement, resulting in a participation rate of over 99.9%; only one objection; and no disputes. *See* Declaration of Jeremiah Kincannon Regarding Notice and Settlement Administration ("Kincannon Notice Decl.") at ¶¶ 12-14. Moreover, and as discussed in detail below, the sole objection to the Settlement is meritless and should be overruled.

If the Settlement is approved, Participating Class Members will receive average payments of over $1,187, including ***100%*** of all wages that were allegedly unlawfully deducted as part of the Sprint Promoter Score (SPS) Adjustment Program, *plus* two years of interest, *plus* over $1.4 million in penalties. In light of the positive results achieved and Class Members' positive reaction to the Settlement, Plaintiffs respectfully request that the Court finally approve the Settlement.

## II. PROCEDURAL HISTORY

Plaintiffs filed their original Complaint in Marin County Superior Court on September 29, 2017. Sprint removed the case to this Court on November 30, 2017. [Dkt. No. 1.] Plaintiffs filed their First Amended Complaint [Dkt. No. 7] on December 6, 2017, and their Second Amended Complaint [Dkt. No. 29] on October 10, 2018. Plaintiffs' primary claim turned on the legality of the SPS Adjustment Program, which Sprint implemented from February 2016 through March 2017, and wherein Sprint deducted 10% of employee commissions if their store did not meet pre-set targets based on customer surveys. Plaintiffs contend this resulted in unlawful deductions from Class Members' commission wages. Plaintiffs also alleged derivative claims for wage statement penalties, waiting time penalties, and Private Attorneys General Act (PAGA) civil penalties.

The parties engaged in extensive discovery, including Sprint's production of over 7,000 pages of documents, including all relevant pay plans and applicable policies, as well as multiple spreadsheets with thousands of lines of data reflecting Class Members' potential damages; Plaintiffs' production of over 800 pages of documents; and Plaintiffs' taking the deposition of Sprint's Rule 30(b)(6) witness on ten distinct topics. Class Counsel also interviewed dozens of Class Members and obtained 13 declarations in support of Plaintiffs' Motion for Class Certification, and spent considerable time consulting with Plaintiffs' retained expert in connection with class certification and individualized damages calculations for each Class Member.

On October 11, 2018, Plaintiffs filed their Motion for Class Certification. [Dkt. No. 31.] On December 18, 2018, this Court granted Plaintiffs' Motion and certified all three of Plaintiffs' proposed classes, including the Unlawful Deductions Class, Wage Statement Class, and Waiting Time Class. [Dkt. No. 45.]

The parties subsequently attended a full-day mediation with Jeffrey A. Ross, Esq., on February 28, 2019. *See* Dkt. No. 57. The parties did not reach a resolution at mediation, but in the following weeks continued their settlement discussions and ultimately reached a settlement. *Id.* Over the following months, the parties negotiated and executed the long-form Settlement.

On May 16, 2019, Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement. [Dkt. No. 63.] This Court held a preliminary approval hearing on June 20, 2019, and

the Court ordered the parties to modify the Settlement's release language and to add certain language to the Class Notice. [*See* Dkt. No. 66.] The parties made those requested changes [Dkt. No. 67], and on June 28, 2019, this Court granted preliminary approval of the Settlement. [Dkt. No. 68.]

Now that the Notice process is complete, Plaintiffs respectfully submit the Settlement for final approval.

**III.    THE SETTLEMENT WARRANTS FINAL APPROVAL**

A class action can be "settled, voluntarily dismissed, or compromised only with the court's approval." *See* Fed. R. Civ. Proc. 23(e). Thus, in order to approve this proposed settlement, this Court must conclude that the proposed settlement is "fair, adequate and reasonable," and is the product of arm's-length and informed negotiations. *See In re Heritage Bond Litig.*, 546 F.3d 667, 674 (9th Cir. 2008). In the Ninth Circuit, "there is a strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *See In re Syncor ERISA litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citation omitted).

**A.    The Settlement Is Fair, Adequate, and Reasonable**

In determining whether a proposed class action settlement is "fair, reasonable, and adequate," this Court may consider some or all of the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Rodriguez v. West Publishing Corp.*, 563 F.3d at 963. Plaintiffs address each of these factors below.

**1.    The Strength of Plaintiffs' Case**

While Plaintiffs maintain their claims are meritorious, Plaintiffs acknowledge that Sprint possessed multiple defenses. These defenses—and their accompanying risks—were discussed at length in Plaintiffs' Motion for Preliminary Approval [Dkt. No. 63]. Plaintiffs recount some of these risks below.

First, while Plaintiffs believe their underlying claim for unlawful deductions was strong, and were able to negotiate a full, dollar-for-dollar recovery of all deducted wages, this does not mean Plaintiffs' underlying claim was without risk. As explained in Plaintiffs' Motion for Preliminary Approval and as noted in the Court's Order Granting Preliminary Approval [Dkt. No. 68 at p. 5], Sprint pointed to several decisions holding that contractually-mandated deductions are often lawful where they are part of an agreed-upon, written pay plan. *See*, *e.g.*, *Prachasaisoradej v. Ralphs Grocery Co.*, 42 Cal.4th 217, 239 (2007) (finding variations in incentive compensation due to store profitability not illegal where pay plan explained how incentives were calculated); *Nguyen v. Wells Fargo Bank*, No. 15-cv-5239-JCS, 2016 WL 5390245 at *16 (N.D. Cal. Sept. 26, 2016) (Spero, J.) (finding no unlawful deduction where "it is clear from the Comp Plans" that certain "adjustments" would be made to commissions).

Even greater risk attended Plaintiffs' claims for wage statement penalties and waiting time penalties, which accounted for over 75% of Plaintiffs' potential damages. *See* Dkt. No. 63 at pp. 10-11. To prevail on these claims, Plaintiffs would have needed to prove not only that Sprint violated the law, but also that its violations were "knowing and intentional" and "willful," respectively. Moreover, a California Court of Appeal recently held wage statement penalties do not accrue where wage statements accurately report hours worked and wages *actually paid*, even if it is ultimately determined that workers were underpaid. *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal.App.5th 1308, 1336 (2018). Sprint argued it would not face liability under *Maldonado*, since employee wage statements accurately reported wages *actually paid* to employees.

Similarly, to recover on their claim for waiting time penalties, Plaintiffs would need to show that Sprint could not establish a "good faith defense" for its failure to pay the underlying wages at issue. *See* 8 Cal. Code Regs. § 13520 (a "good faith dispute that any wages are due will preclude imposition of waiting time penalties"); *Kao v. Joy Holiday*, 12 Cal.App.5th 947, 963 (2017) (holding "good faith dispute" precluded imposition of waiting time penalties over contested wages owed). Especially given a lack of authority directly holding the SPS Adjustment Program was unlawful, there was formidable risk that Sprint would be able to make a strong showing of a "good faith defense."

Finally, there was significant risk in Plaintiffs' derivative PAGA claim. In addition to the risks inherent in Plaintiffs' underlying wage claim, trial courts have discretion to reduce PAGA civil penalties (*see* Labor Code § 2699(e)(2)). Many courts have done so, particularly where the employer presents good-faith defenses. *See*, *e.g.*, *Carrington v. Starbucks Corp.*, 30 Cal.App.5th 504, 529 (2018) (affirming PAGA civil penalty of just $5 per pay period where employer made "good faith attempts" to comply with the law). Sprint argued this Court would severely reduce any potential PAGA civil penalties in light of its good-faith defenses.

In short, as this Court recognized in its Order Granting Preliminary Approval, each of Plaintiffs' claims faced significant challenges on the underlying merits. *See* Dkt. No. 68 at p. 5 (recognizing "significant uncertainty" in Plaintiffs' underlying theory of liability, and "even greater uncertainty" in Plaintiffs' derivative penalty claims). Plaintiffs' ability to prevail on their claims was therefore far from guaranteed. Indeed, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quotations omitted). Thus, this factor supports final approval.

### 2.  **Risk, Expense, Complexity, and Duration of Further Litigation**

Although Plaintiffs feel strongly about the viability of their claims, there were significant risks inherent in moving forward. As described in detail *supra*, there was a real risk that Sprint could have prevailed, leaving Plaintiffs and Class Members with nothing. In addition, although Plaintiffs had already obtained class certification and conducted extensive discovery, additional expense lay ahead if the parties had not settled. The parties intended on bringing motions for cross-summary judgment, and Plaintiffs would need to prepare for trial and litigate possible appeals. In short, absent settlement, the parties would incur considerably more attorneys' fees and costs, with no guarantee that Class Members would recover anything, let alone as much as is being recovered through this Settlement. Thus, this factor supports final approval.

### 3.  **Risk of Maintaining Class Action Status**

Although this Court had already certified all of Plaintiffs' proposed Classes at the time this Settlement was reached, Sprint could still have moved for decertification, or appealed any

judgment recovered by those certified classes and/or the granting of class certification. The Settlement avoids those risks and, thus, this factor favors final approval.

### 4. Amount Offered in Settlement Is Reasonable Given the Realistic Value of Plaintiffs' Claims in Light of the Litigation Risks

As discussed in detail in Plaintiffs' Preliminary Approval Motion, the non-reversionary $4,000,000.00 Gross Settlement Fund is reasonable given the realistic value of Plaintiffs' claims and the risks inherent in pushing those claims forward, particularly in light of the fact that Class Members will be receiving a 100%, dollar-for dollar recovery of all allegedly unpaid wages, plus two years of interest and additional amounts in penalties. *See* Dkt. No. 63 at pp. 16-18.

The risks attending Plaintiffs' claims further demonstrate the Settlement's reasonableness. As this Court found in its Order Granting Preliminary Approval, "These risks sufficiently balance the benefit of a substantial cash payout…for the class (particularly given that each class member would fully recover the underlying unpaid wages plus interest)…" Dkt. No. 68 at p. 6. Nothing has changed since that time to call the Court's determination into question. Given the amount recovered in this action, with Class Members receiving over $1,187 on average in exchange for a narrow release of claims, the amount recovered in this Settlement favors final approval.

### 5. Discovery Completed and the Status of Proceedings

The parties engaged in substantial investigation, discovery, and data analysis prior to reaching the Settlement. Virtually all discovery necessary to try this case was completed, and all three proposed Classes had been certified (Dkt. No. 45). Although trial remained, Plaintiffs intended to move for summary judgment as to liability and damages as to the certified Classes, and had already computed damages for all of the distinct claims for the three certified classes. These calculations largely form the basis of the settlement distribution formula set forth in Section 3.1(e) of the Settlement. In short, Plaintiffs had conducted significant discovery and had all necessary information to intelligently negotiate the Settlement.

### 6. The Experience and Views of Counsel.

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enterprises*

*Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Here, Class Counsel collectively have more than two decades of plaintiff- and defense-side wage and hour class action experience, and have been certified as class counsel in numerous wage and hour class actions in state and federal courts throughout California. *See* Dkt. No. 73-1 (Haines Decl. in Support of Motion for Attorneys' Fees) at ¶¶ 2-11. Class Counsel fully evaluated the strengths and weaknesses of Plaintiffs' claims, including extensive damages analyses, and believe the Settlement is an excellent result for Class Members. This factor strongly supports final approval. *See, e.g., In re Wells Fargo Loan Processor Overtime Pay Litig.*, MDL Dkt. No. C-07-1841 (EMC), 2011 WL 3352460 at *8 (N.D. Cal. Aug. 2, 2011) ("When experienced counsel conclude that a proposed settlement agreement is fair, such a conclusion is entitled to great weight.") (quotation omitted).

### 7. The Presence of a Governmental Participant

Pursuant to PAGA, the Settlement was submitted to the Labor & Workforce Development Agency ("LWDA") on May 16, 2019. *See* Dkt. No. 64 (Proof of Service on LWDA). The LWDA has not lodged any objection to the Settlement. Thus, this factor supports final approval. *See*, *e.g.*, *Jordan v. NCI Group, Inc.*, No. 16-701 JVS (SPx), 2018 WL 1409590 at *3 (C.D. Cal. Jan. 5, 2018) (LWDA's non-response was "tantamount to its consent to the proposed settlement terms, namely the proposed PAGA penalty amount.") (quoting *Echavez v. Abercrombie & Fitch Co., Inc.*, 2017 WL 3669607 at *3 (C.D. Cal. Mar. 23, 2017)); *see also Gooding v. Vita-Mix Corp.*, No. 2:16-cv-03898-ODW(JEMx), 2018 WL 571881 at *6 (C.D. Cal. Jan. 25, 2018) (overruling objection that PAGA payment was too low, and finding that "[the objector's] claim regarding the CLWDA is refuted by the fact that it receives a payment from the settlement fund in connection with Plaintiffs' PAGA claim, and that the CLWDA did not lodge any objection.")

### 8. The Reaction of the Class Members to the Proposed Settlement

A court may infer that a class action settlement is fair, adequate, and reasonable when few class members object. *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529.

Here, the response to the Settlement has been overwhelmingly positive. Only two Class Members opted out, resulting in a **99.91%** participation rate; only one submitted an objection; and no Class Member submitted a dispute. *See* Kincannon Notice Decl., ¶¶ 12-14. Moreover, as explained immediately below, the sole objection is meritless and should be overruled. In sum, Class Members' overwhelmingly positive reaction to the Settlement supports final approval.

### IV. THE SOLE OBJECTION TO THE SETTLEMENT SHOULD BE OVERRULED

Of the 2,288 Class Members, only one has objected to the Settlement. On October 22, 2019, the last possible date to file an objection, Edris Yasin filed an objection through his attorney, Meeno Chahbazi.[1]

Mr. Yasin's threadbare, 2-page objection raises two alleged deficiencies with the Settlement: (1) that the release is overbroad because Mr. Yasin contends it could allegedly release his claims for off-the-clock work, unpaid overtime, meal and rest breaks, and derivative claims for wage statement and waiting time penalties; and (2) that Mr. Yasin did not receive proper notice, because when he requested an electronic copy of his notice he received "blank pages."

Mr. Yasin's objection should be overruled. As explained in more detail below, this Court already closely scrutinized the breadth of the release and found it to be appropriate, and no other Class Member has objected to the release (or any other portion of the Settlement). Moreover, none of Mr. Yasin's alleged wage and hour claims would be included in the "Released Claims" as defined in the Settlement, as they are outside the scope of the Released Claims either substantively or temporally (or both). Mr. Yasin's "defective notice" claim is unsupported by the facts, as he is the only Class Member to be affected by this alleged deficiency.

---

[1] It is Plaintiffs' counsel's understanding that Ms. Chahbazi has been attempting to negotiate an individual settlement on Mr. Yasin's behalf for alleged claims of harassment, discrimination, and other claims, since September 25, 2019. *See* Declaration of Heather Hamilton ("Hamilton Decl."), ¶ 3. Ms. Chahbazi sent her "meet and confer" correspondence to counsel on October 14, 2019. *Id.*, ¶ 4. This correspondence raised concerns related to the Settlement for the first time. *Id.* Moreover, until Ms. Chahbazi communicated an intent to object to the Settlement, her client had not alleged any claims for unlawful deductions, inaccurate wage statements, or waiting time penalties. *Id.* On October 22, 2019, Ms. Chahbazi filed the Yasin objection. Dkt. No. 78. Less than one week later, on October 28, 2019, Ms. Chahbazi *increased* her settlement demand to Sprint. Hamilton Decl., ¶ 5. While counsel does not purport to know what is in Mr. Yasin's or Ms. Chahbazi's heart, it appears as though they may be attempting to use the objection as leverage in their settlement negotiations with Sprint.

### A. Scope of the Release

Mr. Yasin is purportedly concerned with the "overbreadth of the settlement release language." Dkt. No. 78 at 1. Specifically, Mr. Yasin alleges that while employed by Sprint, he was required to work off-the-clock and was denied meal and rest breaks. *Id.* at 2. Mr. Yasin further asserts that the release in the Settlement might somehow be construed to release these claim and/or derivative claims for wage statement violations and waiting time penalties. *Id.*

#### 1. The Release is Tied to the Claims Certified for Class Treatment

Mr. Yasin's purported concern is baseless. A cursory review of the Settlement reveals that it does not release Class Members' claims for unpaid overtime, off-the-clock work, meal periods, or rest periods. Nowhere does the Settlement even mention those claims. In fact, the Settlement makes clear that the Released Claims only include "claims that were certified for class treatment." *See* Dkt. No. 67-1 (Amended Settlement Agreement) at ¶ 4.3. As this Court is aware, Plaintiffs never alleged, and never moved to certify, claims for off-the-clock work, unpaid overtime, or meal and rest break violations. Plaintiffs moved to certify, and successfully certified, a very narrow claim for unlawful wage deductions based on the SPS Adjustment Program, and claims derivative of that claim. *See* Dkt. No. 45 (Order Granting Class Certification) at p. 3.

In addition to the plain language of the release, the Parties confirmed at the Preliminary Approval Hearing that the Released Claims only encompass those claims that were certified for class treatment. Specifically, in response to the Court's comments regarding whether the release is "tethered to the unlawful deductions related to Sprint promoter score," the parties confirmed that the release is, in fact, tethered to the certified claims. *See* Haines Decl., Exh. A (Transcript of Proceedings from Preliminary Approval Hearing) at 6:18-8:1. The parties confirmed it was their intention to tie the release to the certified claims, and pointed to the release language cited above as evidencing that intention. *Id.*; *see also* Dkt. No. 67-1 at ¶ 4.3 ("Released Claims" include "all claims that were certified for class treatment…that arose during the Settlement Period.")

The only portion of the Released Claims that could potentially release claims not based on the SPS Adjustment Program is the release of claims for waiting time penalties. As the parties explained in the Motion for Preliminary Approval and at the Preliminary Approval Hearing, this

is in recognition of the fact that an employee generally may recover waiting time penalties only once, and may not make successive claims for waiting time penalties based on multiple different theories. *See Reyes v. CVS Pharmacy, Inc.,* No. C 14-00964 MJS, 2016 WL 3549260 at *9 (E.D. Cal. June 29, 2016) (noting that former employees "would not be entitled to additional waiting time penalties, as Labor Code section 203 provides penalties for the failure to pay any and all wages owed upon termination; multiple awards do not accrue for multiple violations.")

After hearing argument on this point, this Court asked the parties to revise the Released Claims to state that whether the release of waiting time penalties would release that claim based on other theories of liability would be left to the judge in any such future case. Haines Decl., Exh. A at 6:5-12. The parties made that change in the Amended Settlement that was ultimately granted preliminary approval by this Court. *See* Dkt. No. 67-1 at ¶ 4.3; *see also* Dkt. No. 68 at p. 7.

Notably, the Settlement's release language was set forth in full in Section 6 of the Notice that was mailed to Class Members, both in the original Notice mailed in July 2019 and the Corrected Notice mailed in August 2019. *See* Kincannon Notice Decl. at Exhs. A & B. After having the opportunity to review the release language, no other Class Member has objected to it (or to any other portion of the Settlement), and only two (less than 0.1%) have opted out.

In sum, this Court already closely scrutinized the release and found that "the proposed scope of release for the absent class members is appropriately limited to the claims held appropriate for class treatment, with the addition of related claims for waiting time (to the foregoing extent), wage statement, and PAGA penalties." [Dkt. No. 68 at p. 8.] Nothing in Mr. Yasin's objection calls this Court's determination into question.

### 2. Yasin Lacks Standing to Challenge the Release of Waiting Time or Wage Statement Penalties, as Any Potential Claim He Might Have for Those Penalties Would Not Be Covered by the Release

Ms. Yasin purports to be concerned that the Settlement could release his derivative claims for wage statement penalties and waiting time penalties based on his unrelated wage claims. Aside from the fact that the Released Claims are expressly tied to the certified claims (as explained above), any potential claim that Mr. Yasin has for these penalties would not be included in the Released Claims, for the simple reason that they fall outside the Settlement Period.

The Settlement is clear that it only releases claims "involving any conduct by any Released Party **that arose during the Settlement Period**." Dkt. No. 67-1 at ¶ 4.3 (emphasis added). The "Settlement Period" for the waiting time claim spans from February 2016 to June 28, 2019 (the date of preliminary approval), and the "Settlement Period" for the wage statement claim spans from September 29, 2016 to March 2017. *See id.* at ¶¶ 1.4, 2.37.[2]

With respect to Mr. Yasin's alleged claim for waiting time penalties, Mr. Yasin's employment with Sprint ended on July 5, 2019. *See* Hamilton Decl., ¶ 2. Thus, Mr. Yasin's waiting time penalty claim could not accrue until July 5, 2019, which is 7 days *after* the end of the Settlement Period. *See Pineda v. Bank of America, N.A.*, 50 Cal.4th 1389 at FN7 (2010) ("A cause of action for section 203 penalties accrues when an employer fails to pay wages on an employee's final workday"). Mr. Yasin's waiting time claim therefore falls outside the scope of the Released Claims, and is unaffected by the Settlement.

As for Mr. Yasin's wage statement claim, the statute of limitations is one year. *Falk v. Children's Hosp. Los Angeles*, 237 Cal.App.4th 1454, 1469 (2015). To counsel's knowledge, Mr. Yasin has not filed a lawsuit against Sprint. If he filed a lawsuit today, his wage statement claim would reach back to November 2018. Even if he had filed a lawsuit at the time his attorney first contacted Sprint about his individual claims in September 2019, his wage statement claim would reach back to September 2018. As stated, the Settlement Period for the Wage Statement Class ended in March 2017. Thus, Mr. Yasin's potential wage statement claim based on his purported unpaid wage, meal break, and rest break claims also falls outside the Settlement Period.[3]

---

[2] The "Settlement Period" is defined as "the time periods applicable to the classes certified by the Court on December 18, 2018 and identified in the class definitions in paragraph 1.4 above. For purposes of the Waiting Time Class (Class 3), the Settlement Period ends on the date of preliminary approval of the Class Settlement." Settlement, ¶ 2.37. Paragraph 1.4 provides that the time period applicable to the Wage Statement Class is September 29, 2016 through March 2017, and the time period applicable to the Waiting Time Class begins February 2016. *Id.*, ¶ 1.4.

[3] To the extent Mr. Yasin claims to have an "unlawful deduction" claim based on his overtime, off-the-clock, and meal and rest break claims, this is: (1) unsupported by any relevant law, as those claims would be brought under different Labor Code sections and would not support a claim for unlawful deductions; and (2) irrelevant because, as discussed, the Settlement's release of the "unlawful deductions" claim is tied to the SPS Adjustment theory that was certified for class treatment. Likewise, any claim for "unlawful business practices" would be released only insofar as it relates to the SPS Adjustment theory certified for class treatment. *See* Dkt. No. 67-1 at ¶ 4.3.

Based on the above, Mr. Yasin does not have standing to challenge the scope of the release as to derivative wage statement penalties or waiting time penalties based on his unpaid wage, meal break, or rest break claims, as any claim he might have for those penalties falls outside the Settlement Period and thus outside the scope of the Released Claims.[4]

### B. Allegedly Defective Notice

Mr. Yasin claims he received "blank pages" when he requested an electronic copy of his Correction Notice Packet, due to an "error in the system" experienced by Simpluris. *See* Dkt. No. 78 at p. 3. Mr. Yasin's counsel asserts that "we are concerned that others, like Mr. Yasin, received defective notices based on system errors or encountered problems with Simpluris when attempting to obtain information." *Id.* Based on this alleged deficiency, Mr. Yasin claims he needs "additional time to review the Notice and consider his options." *Id.*

As for Mr. Yasin's purported concern that other Class Members did not receive Correction Notice Packets because of the same "system error," the Parties can represent to the Court that this is not the case. Jeremiah Kincannon, the Case Manager overseeing this case for Simpluris, affirms in his accompanying declaration that: (i) the system error affected <u>only</u> electronic copies of the Correction Notice (and <u>not</u> hard copies mailed to Class Members), (ii) Mr. Yasin and only one other individual requested an electronic copy of their Correction Notice Packet, and (iii) the other individual confirmed that he had received his hard copy of the Correction Notice Packet. *See* Declaration of Jeremiah Kincannon in Response to Objection ("Kincannon Obj. Decl.") at ¶¶ 6-8. Thus, the only individual to be affected by this alleged deficiency was Mr. Yasin. *Id.*, ¶ 9.

Mr. Kincannon further declares that Mr. Yasin's address was confirmed as accurate by Simpluris' search of the National Change of Address (NCOA) database, and that Mr. Yasin's Correction Notice Packet was not returned to Simpluris as undeliverable. Kincannon Obj. Decl., ¶ 5. Thus, while it may be true that Mr. Yasin did not receive his Correction Notice Packet by mail as he claims (Dkt. No. 78 at 2), that was not a result of any defect in the Notice process.

---

[4] Mr. Yasin's counsel claims "over a hundred other Sprint employees have also experienced similar violations of their rights and have multiple wage and hour claims against Sprint…." (Dkt. No. 78 at 2.) Mr. Yasin's counsel provides no basis for this "belief," and there does not appear to be any. In any event, even if there were others with wage and hour claims similar to Mr. Yasin's, their claims would not be affected by the Settlement, as discussed herein.

As the Court will recall, Correction Notice Packets were mailed in August 2019 because the original Notice Packets were discovered to have mis-matched Class Members' names and addresses. *See* Dkt. No. 71. After the initial mailing, Class Counsel received several phone calls from Class Members indicating they had received incorrect notices. Haines Decl., ¶ 3. However, after the Correction Notice Packets were mailed, Class Counsel has not received any such communications from Class Members (*Id.*), a further indication that the Correction Notice Packets were mailed correctly without any deficiencies. *See also* Kincannon Obj. Decl., ¶ 7 (confirming that "all hard-copy Correction Notice Packets mailed on the August 23, 2019 mailing date contained the appropriate information and were not blank or defective in any manner.")

Mr. Yasin's purported need for "additional time" to "consider his options" is disingenuous at best. Mr. Yasin has been represented by counsel since at least "mid-September 2019" (Dkt. No. 78 at p. 4), and had virtually a full month (since September 23, 2019) to review his Correction Notice Packet with his counsel before the October 22, 2019 objection deadline. Moreover, the fact that his counsel has filed an objection on his behalf confirms that he (and/or his counsel) has had a full opportunity to review the Settlement and all pertinent provisions thereof. There is no reason to further delay the Settlement process for the other 2,285 Class Members who did not opt-out or object, and who are patiently awaiting their Settlement payments.

For all of the above reasons, Plaintiffs submit that the Court should overrule Mr. Yasin's objection and approve the Settlement.

**V.     THE COURT-ORDERED NOTICE COMPORTS WITH DUE PROCESS**

Due process requires class notice be provided by the best method reasonably available. *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974). Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004). Here, the parties engaged Simpluris, an experienced third-party administrator, to mail Notice Packets to Class Members.

As noted, Simpluris mailed the original Notice Packets to all Class Members in July 2019. Kincannon Notice Decl., ¶ 7. After the parties discovered that names and addresses had been mis-

matched in the original data provided to Simpluris, and after the parties informed the Court of the issue and obtained approval to mail corrected notice packets (*see* Dkt. Nos. 71-72), Simpluris mailed Correction Notice Packets to all 2,288 Class Members on August 23, 2019. Kincannon Notice Decl., ¶¶ 8-10. Simpluris performed a "skip trace" on any Correction Notice Packet that was returned without a forwarding address, and promptly re-mailed any Correction Notice Packet for which an updated address was located. *Id.*, ¶ 11. Simpluris re-mailed a total of 103 Correction Notice Packets. *Id.* Ultimately, 31 Correction Notice Packets were undeliverable. *Id.*

The Correction Notice Packets contained information and explanations about the claims in the litigation and the terms of the Settlement, the release of claims under the settlement, the right to object to or opt-out of the settlement, and the calculation of settlement payments, including estimated individual payment amounts. *See* Kincannon Notice Decl. at Exh. B. The Notices also provided a toll-free telephone number for Class Members to call with any questions, as well as a website where Class Members could view case-related documents. *Id.* Class Members were also provided with contact information for Class Counsel. *Id.*

For these reasons, Plaintiffs submit that the notice procedure implemented for this Settlement meets the requirements of due process, and supports final approval of the Settlement.

**VI.   CONCLUSION**

For the reasons set forth herein, Plaintiffs respectfully request that the Court grant this Motion, overrule the sole objection to the Settlement, and enter the order granting final approval of the settlement filed concurrently herewith.

Dated: November 7, 2019

Respectfully submitted,
HAINES LAW GROUP, APC

By: _/s/Paul K. Haines_
Paul K. Haines
Attorneys for Plaintiffs, the Certified Classes, and Aggrieved Employees