IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA CAUDLE and KRYSTLE WHITE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SPRINT/UNITED MANAGEMENT COMPANY, a Kansas corporation; and DOES 1 through 100,<br><br>Defendant.<br>_____ / | No. C 17-06874 WHA<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT AND GRANTING IN PART MOTION FOR ATTORNEY'S FEES** |

**INTRODUCTION**

In this wage-and-hour class action, plaintiffs move for final approval of a proposed settlement agreement and for attorney's fees and expenses. Defendant does not oppose, but there is one objection. For the reasons stated below, the objection is **OVERRULED**. To the extent stated below, the motion for final approval of the class settlement is **GRANTED**. The motion for attorney's fees and expenses is **GRANTED IN PART**.

**STATEMENT**

Prior orders set forth the detailed background of this case (*see* Dkt. No. 45). In brief, defendant Sprint/United Management Company sells mobile phone devices and services to retail customers. In February 2016, Sprint instituted a redesigned incentive compensation plan called the Sprint Promoter Score Adjustment program, which remained in effect until March 2017. This program allegedly made an unlawful 10% "across-the-board deduction" from employees'

individually earned commission based on factors outside the individual employees' control and unrelated to the individual employees' efforts regarding a particular sale or transaction.

Plaintiffs Joshua Caudle and Krystle White — a former store manager and former lead retail consultant, respectively — worked in various northern California Sprint retail store locations. They brought the instant action in November 2017, asserting various claims arising from the Sprint Promoter Score Adjustment program for alleged unlawful deductions from employees' wages under California Labor Code Sections 221–23.

An order dated December 18, 2018, certified three classes relating to the deductions made under the Sprint Promoter Score Adjustment program (Dkt. No. 45 at 11–12). The first class addressed Sprint's policy at issue (*i.e.*, the Sprint Promoter Score Adjustment program). The other two certified classes — the wage statement and waiting time classes — derived from the first class. Both Joshua Caudle and Krystle White became class representatives (*id.* at 12). Following certification, the parties reached a class settlement (Dkt. No. 63-1 ¶ 9).

A June 2019 order granted plaintiffs' motion for preliminary approval of a proposed class settlement (Dkt. No. 68). That order also advised that both the requested attorney's fees and incentive award would be subject to reduction at the final approval stage. The order also approved, as to form and content, a class notice by mail and website.

The settlement administrator mailed the approved notice packets via first class mail on July 26, 2019, but several names and addresses in the class list were transposed. The settlement administrator then mailed corrected notice packets, with extended response dates for class members, on August 23, 2019. As of the hearing, 129 packets were returned. The settlement administrator re-mailed 103 notice packets to forwarding addresses obtained from either the Post Office, the Class, or from reputable third-party search tools. Ultimately, out of 2,288 class members, 31 notice packets were undeliverable because the settlement administrator could not find the class member (Dkt. 81-1 ¶¶ 6–11).

Plaintiffs now move for final approval of the proposed settlement of $4,000,000 and for attorney's fees, expenses, and name-plaintiffs' incentive awards. Class counsel seek $1,000,000 in attorney's fees (comprising 25% of the fund), litigation expenses of $34,687.80, $5,000 in

incentive payment to Plaintiff Caudle, and $3,000 in incentive payment to Plaintiff White. Defendant does not oppose. This order follows full briefing and oral argument (Dkt. Nos. 73, 81).

# ANALYSIS

## 1. Final Approval of Class Settlement.

Under FRCP 23(e), court approval is required for any settlement agreement that will bind absent class members. When a proposed settlement agreement is presented, the district court must perform two tasks: (1) direct notice in a reasonable manner to all class members who would be bound by the proposal; and (2) approve the settlement only after a hearing and on finding that the terms of the agreement are fair, reasonable, and adequate. FRCP 23(e)(1)–(2).

### A. Adequacy of Notice.

The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted). It must also describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980). The undersigned judge previously approved the form, content, and planned distribution of the class notice (Dkt. No. 68).

The failure of notice to 31 class members is concerning (Dkt. No. 81-1 at ¶ 11). The undersigned judge was inclined to exclude these members from the class as they have not had the opportunity to opt out or object to this proposed settlement. Realistically, however, litigation costs are likely to inhibit later suit against Sprint by the 31. Upon due reflection, the better course in this case is to keep the 31 in the class and bind them to the settlement because their portion of the settlement fund will be kept safe in their names with the Controller of California. Class members need not file a claim with the administrator — checks will be sent automatically. The settlement provides:

> After the 180-day check cashing period, funds from any settlement checks that remain uncashed will escheat to the California State Controller for deposit in the State of California Unclaimed Property Fund in the name of the Participating Class Member whose check was

3

> not cashed, where the Participating Class Member can later claim the
> funds.

This is the best course to ensure the 31 class members who did not receive notice will, nonetheless, obtain some settlement from Sprint (Dkt. No. 81-1 at ¶¶ 3, 4). This order accordingly finds that notice to class members was adequate.

### B. Fairness, Reasonableness, & Adequacy of Proposed Settlement.

A district court may approve a proposed class settlement only upon finding that it is fair, reasonable, and adequate, taking into account (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. FRCP 23(e); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015). For the following reasons and for the reasons stated in the June 2019 order (Dkt. No. 68), the proposed class settlement is fair, reasonable, and adequate under FRCP 23(e).

*First*, as noted in the June 2019 order granting preliminary approval, plaintiffs were not guaranteed victory (Dkt. No. 68 at 5). Plaintiffs' primary wage-deduction claim faces an uphill battle against several decisions holding variable commissions legal under California wage law. For example, the California Supreme Court in *Prachasaisoradej v. Ralphs Grocery Co.* approved of a contingent compensation plan, "[o]ver and above [employee] regular wages," based upon individual grocery store performance. *See* 165 P.3d 133, 135 (Cal. 2007). And in *Nguyen v. Wells Fargo Bank*, Magistrate Judge Joseph Spero of this district explained that "California courts may permit employers to deduct certain costs from employee commissions . . . when the commission is considered an advance pending the fulfillment of some condition." No. 15-cv-05239-JCS, 2016 WL 5390245 at *14 (N.D. Cal. Sept. 26, 2016). Then, plaintiffs' wage statement claim runs directly into *Maldonado v. Epsilon Plastics, Inc.*, where the California Court of Appeal found no wage-statement violation because, even though workers were underpaid, the statements accurately reflected hours worked and wages *actually* paid. *See* 232

Cal. Rptr. 3d 461, 481–82, 22 Cal. App. 5th 1308, 1336–37 (2018). Finally, plaintiffs' waiting time claims would be precluded if Sprint establishes a good faith defense. *See Kao v. Holiday*, 219 Cal. Rptr. 3d 580, 594, 12 Cal. App. 5th 947, 963 (2017) (citing 8 Cal. Code Reg. § 13520). Plaintiffs' case is far from proven; the risk of protracted litigation and, indeed, failure on the merits remains substantial. The proposed settlement offers a guaranteed, positive result now, fairly discounted for these risks.

*Second*, the parties have conducted adequate discovery. Plaintiffs deposed Sprint's Rule 30(b)(6) witness on 10 topics, drafted seven sets of written discovery, reviewed over 7,000 pages of Sprint production, interviewed dozens of class members and obtained 13 declarations in support of class certification, and retained an expert to assist in damages calculation (Dkt. No. 73-1 ¶ 25). The parties also attended a full-day mediation session even before the negotiations on the proposed settlement began (*ibid.*). Their proposed settlement is an informed decision.

*Third*, the relevant parties approve of the settlement. Class counsel have significant experience in wage and hour class actions, representing *both* plaintiffs and defendants (Dkt. No. 73-1 ¶¶ 2–11) . Class counsel's approval of this settlement bears weight. Additionally, out of 2,288 class members, only two members opted out, and only one objected — to the release clause and class notice, *not* to the monetary distribution (Dkt. No. 81-1 ¶¶ 7, 12, 14, No. 78 at 1–3). But as noted above, class notice was sufficient, and as found in the June 2019 order, the proposed settlement release of claims is appropriately narrow (Dkt. No. 68 at 6–8). Regardless, the widespread approval of the class indicates the adequacy of the proposed settlement. *See Marshall v. Holiday Magic*, 550 F.2d 1173, 1178 (9th Cir. 1977) (*abrogated on other grounds by Phillips Petr. Co. v. Shutts*, 472 U.S. 797 (1985)).

*Fourth*, but most important, the settlement achieves a fair result for the class. The proposed settlement fund, $4,000,000, recovers half of the potential maximum recovery in this suit (Dkt. No. 68 at 4). Class members will be *fully* reimbursed for the deductions made under the Sprint Promoter Score Adjustment program, with an additional two years of interest (*ibid.*, Dkt. No. 81 at 1, 6). The class will receive approximately one fifth of the potential penalties for

5

the derivative wage statement and waiting time claims, and Sprint will pay approximately half the potential PAGA penalties (*compare* Dkt. Nos. 68 at 4, 81-1 Ex. B ¶ 3.b).

Following the distribution of administrative costs, incentive awards, attorney's fees, and PAGA penalties, the class will be reimbursed for the deductions, plus interest. Of the remainder of the fund (excluding only the portion of attorney's fees held until the class is cared for), 90% will be distributed to the Waiting Time Class and 10% to the Wage Statement Class, as described in the proposed settlement. Notably, class members need do nothing — payments will be sent automatically upon approval of this proposed settlement. Funds from checks uncashed after 180 days will be held by the California State Controller in the state's Unclaimed Property Fund for class members to later claim (Dkt. No. 81-1 Ex. B ¶¶ 3–4). There will be no reversion of funds to Sprint (Dkt. No. 81 at 6).

Moreover, the proposed release of claims is appropriately narrow. As before, the "settlement agreement only releases the certified claims for unpaid wages and derivative wage statement and PAGA penalties for the same violation." The release of waiting time claims is broader, "irrespective of the nature of the underlying unpaid wages." But this is because "California law generally provides for only one waiting time penalty per employee" (Dkt. No. 68 at 7) (internal quotations omitted). Thus, as before, the content of the proposed settlement is fair to the class.

The factors considered, the proposed class settlement is fair, reasonable, and adequate so as to warrant final approval. Accordingly, final approval of the proposed class settlement and plan of allocation is **GRANTED**.

### C. Objection to the Settlement.

A single class member, Edris Yasin, objects to the proposed settlement. Mr. Yasin is concerned that his own separate wage and hour claims against Sprint are covered by the proposed settlement claims-release (Dkt. No. 78 at 1–2). They are not. As explained in the June 2019 order, "the settlement agreement ***only releases the certified claims*** for unpaid wages and derivative wage statement and PAGA penalties for the same violation" (Dkt. 68 at 7) (emphasis added). The three classes certified in this case address the Sprint Promoter Score Adjustment

program. Mr. Yasin's alleged health and wage claims regarding his personal health conditions are outside the scope of the classes. To reiterate: *only* claims of wage deduction, derivative wage statement, and PAGA penalties, certified for class treatment, arising from Sprint's Promoter Score Adjustment program are released by the proposed settlement.

Mr. Yasin is also incorrect that his personal waiting time claims are released. True, the waiting time claim-release is broader, releasing any claim for waiting time penalties under the proposed settlement (Dkt. No. 81-1 Ex. B, ¶¶ 1, 6). But Mr. Yasin is not affected. The waiting time class comprises employees who separated from Sprint between February 2016 and June 28, 2019; Mr. Yasin was employed with Sprint from May 2, 2015 through *July 5, 2019* (Dkt. No. 81-4 ¶ 2). Thus, Mr. Yasin is not a member of class 3 and his alleged waiting time claims are not impacted by the proposed settlement.

Mr. Yasin then contends notice to the class members was inadequate (Dkt. No. 78 at 2–3). Mr. Yasin mistakes the standard of constitutionally adequate notice. Notice need not eliminate "the possibility of conceivable injury" — rather notice must simply be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane*, 339 U.S. at 314. Notice here was so calculated. Mr. Yasin's objection cites a singular occurrence but does not plausibly allege a larger, structural failure in the approved class notice. Moreover, "[t]he fundamental requisite of due process of law" has been satisfied here — though delayed, Mr. Yasin received actual notice of the proposed settlement, voiced his objections, and has had "the opportunity to be heard." *See Mullane*, 339 U.S. at 314. Having been heard, Mr. Yasin's objections are **OVERRULED**.

**2.    Motion for Attorney's Fees, Expenses, & Incentive Award.**

**A.    Attorney's Fees.**

Rule 23(h) provides for "reasonable attorney's fees" in a "certified class action." A district court must ensure that attorney's fees are "fair, adequate, and reasonable" even if the parties have entered into a settlement agreement that provides for those fees. *Staton v. Boeing Co.*, 327 F.3d 938, 963–64 (9th Cir. 2003). "In 'common-fund' cases where the settlement or

7

award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (*overruled on other grounds by Wal-Mart v. Dukes*, 564 U.S. 338 (2011)).

The benchmark award in this circuit is 25 percent of the common fund. *Hanlon*, 150 F.3d at 1029. But "[t]he benchmark ***should*** be adjusted, or replaced by a lodestar calculation," to account for the specific circumstances of the case. *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (emphasis added). "Reasonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Stanger v. China Elect. Mot., Inc.*, 812 F.3d 734, 739 (9th Cir. 2016). As our court of appeals has explained, "the usual approach to evaluating the reasonableness of an attorney fee award requires application of the lodestar method and *Kerr* factors." *Resurrection Bay Conservation Alliance v. City of Seward*, 640 F.3d 1087, 1095 (9th Cir. 2011). The *Kerr* factors include "the time and labor required . . . the novelty and difficulty of the questions involved . . . the amount involved and the results obtained . . . ." *Id.* at 1095 fn. 5.

Class counsel seek one million dollars (or 25 percent of the gross settlement fund) (Dkt. No. 73 at 1), and proclaim their "extensive factual and legal investigation" of the case (Dkt. No. 73 at 12). Counsel overstate the extent of their work. Two years, one Rule 30(b)(6) deposition, 7,000 pages of Sprint production, 800 pages of class production, seven sets of discovery, and retaining a damages expert is merely adequate — *not* extensive (*see* Dkt. No. 73-1 at ¶ 25).

The total recovery, had the case been won, would have been approximately $8,009,679.10 (Dkt. No. 68 at 4), so the settlement represents only 50% the potential recovery. An award of 22.5% percent of the common-fund (or $900,000) is reasonable.

This amount far exceeds the lodestar method. Class counsel logged 852.75 hours (Dkt. No. 73-1 Ex. C). The majority of class counsel's billing records demonstrate fair representation (*ibid.*). Class counsel's exercise of "billing judgement" is evidenced, for example, in trimming junior associates from meetings between several attorneys and not billing for time spent researching later-abandoned legal theories (*See* Dkt. No. 73-1 at ¶ 27). Class counsel appeared

8

to staff proportionally with defendant's counsel; telephone conferences and hearings are generally two attorneys each. And, a junior associate's presence, in addition to the two senior attorneys, at the class certification motion is necessary and reasonable to the development of younger attorneys. Only these few billing entries appear unfounded:

| Date | Name | Task | Hours |
|---|---|---|---|
| 5/22/2018 | TK | Emails with AMC re: downloading Sprint's initial document production | 0.25 |
| 5/22/2018 | AMC | Emails with TK re: downloading Sprint's initial document production | 0.25 |
| 5/23/2018 | TK | Emails with AH re: downloading second portion of Sprint's initial document production | 0.25 |
| 5/23/201[8] | AH | Emails with TK re: downloading second portion of Sprint's initial document production | 0.25 |

Receipt and download of discovery production is traditionally, and ably, performed by a paralegal. The involvement of an attorney in this task is irregular and unexplained (Dkt. No. 73-1 Ex. C). Thus, the entries for TK above are excluded.

Class counsel propose the following billing rates:

| Name | Class Year | Rate |
|---|---|---|
| Paul K. Haines | 2006 | $650 |
| Tuvia Korobkin | 2009 | $550 |
| Stacey M. Shin | 2015 | $400 |
| Jamin Xu | 2017 | $350 |
| Paralegals | N/A | $175 |

(Dkt. No. 73-1 ¶ 33). In light of other rates approved in this district and those presented in the Laffey Matrix, these rates are acceptable. Thus, class counsel's lodestar is $444,275.

The lodestar may be multiplied according to "a host of 'reasonableness' factors." *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941–42 (9th Cir. 2011). "Foremost among these considerations . . . is the benefit obtained for the class." *Id.* at 942. Under the proposed settlement, the class will recover approximately half of the potential damages (Dkt. Nos. 68 at 4, 81-1 Ex. B ¶ 3.b, 73 at 9). Even after subtracting attorney's fees from the common fund, each class member will be reimbursed in full for the deductions under the Sprint Promoter Score Adjustment program, plus two years of interest (Dkt. Nos. 68 at 4, 73 at 9). The class will receive approximately one fifth the potential wage statement and waiting time penalties and approximately half the potential PAGA penalties (*compare* Dkt. Nos. 68 at 4, 81-1 Ex. B ¶ 3.b). Additionally, class counsel litigated effectively despite the "risk of nonpayment." *In re Bluetooth Headset*, 654 F.3d at 942. Class counsel took the case on a contingent-fee basis (Dkt. No. 73-1 ¶ 38), despite the substantial risks of litigation as noted in the June 2019 order (Dkt. No. 68 at 5).

In sum, class counsel took a fair risk and won the class a substantial benefit. An award of $900,000 represents a lodestar multiplier just over 2.0. Thus, the motion for attorney's fees is **GRANTED IN PART**. Class counsel are awarded **ATTORNEY'S FEES OF $900,000**.

### B. Expenses.

Class counsel seek litigation expenses of $34,687.80. The largest components of these expenses are fees for the damages expert, travel and lodging costs, mediation fees, and class notice costs. Other components include deposition, court filing, legal research, copying, and postage expenses (Dkt. No. 73-1 Ex. B). One requested expense for a $133 flight change is left unexplained and does not appear necessary (*ibid.*). But the remainder of these expenses were reasonable and necessary to the litigation and are of the type customarily billed to a fee-paying client. Moreover, class counsel sought up to $50,000 in litigation expenses at the preliminary approval stage. The instant request leaves more money for the class. No class member objects to recovery of these costs. The motion for reimbursement of these costs is **GRANTED IN PART**. Class counsel are awarded litigation costs of **$34,554.80**.

### C. Incentive Award.

Plaintiffs Caudle and White request $5,000 and $3,000 as an incentive award, respectively. As stated, defendant does not oppose this request. As cautioned in the undersigned's "Notice and Order Re Factors to be Evaluated for Any Proposed Class Settlement," "[a] request for an incentive payment is a red flag" (Dkt. No. 19 at 5). Incentive awards pose the risk that a class representative has gone along with a settlement, not because it secures a good outcome for the class, but simply for the incentive award. Such awards should therefore be subject to careful scrutiny.

Plaintiff Caudle states he spent over 100 hours raising concerns about legality and fairness of the Sprint Promoter Score Adjustment program to Sprint higher-level management *before* this case was filed. Following case initiation, Plaintiff Caudle worked closely with class counsel, reviewing factual allegations, assisting counsel in understanding Sprint policies, and responding to discovery requests. Plaintiff White also states she worked closely with class counsel in dozens of phone calls and discussions regarding Sprint policies. Plaintiff White also spent $20 of her own money sending documents to class counsel (Dkt. Nos. 73-2 ¶¶ 3–16, 73-3 ¶¶ 4–7).

Moreover, under the proposed settlement, both Plaintiffs Caudle and White release *all* claims against Sprint, not just claims certified for class treatment and waiting time claims (Dkt. Nos. 67-1 ¶ 4.7, 73 at 25). In recognition of Plaintiff Caudle and White's service in the case, their broader release of claims, and their assumption of substantial reputational harm as name-plaintiffs against their employer, plaintiffs' request for an incentive award is **GRANTED IN PART**. Plaintiff Caudle is awarded **FIVE HUNDRED DOLLARS**. Plaintiff White is awarded **THREE HUNDRED TWENTY DOLLARS**.

11

**CONCLUSION**

Accordingly, is it hereby ordered:

1. The notice of settlement, as well as the manner in which it was sent to class members, fairly and adequately described the proposed settlement, the manner in which class members could object to or participate in the settlement, and the manner in which class members could opt out of the class; was the best notice practicable under the circumstances; was valid, due, and sufficient notice to class members; and complied fully with the Federal Rules of Civil Procedure, due process, and all other applicable laws. A full and fair opportunity has been afforded to class members to participate in the proceedings convened to determine whether the proposed class settlement should be given final approval. Accordingly, the class members not excluded from the settlement by filing a timely request for exclusion are bound by this settlement order.

2. The proposed class settlement is fair, reasonable, and adequate as to the class, plaintiffs, and defendant; it is the product of good faith, arms-length negotiations between all parties; and it is consistent with public policy and fully complies with all applicable provisions of law. Class members need not submit a claim; checks will be mailed automatically. After 180 days, uncashed checks will escheat to the California Unclaimed Property Fund in the name of the participating class member whose check was uncashed, where the member may later claim the funds. The settlement is therefore approved.

3. The objection of Edris Yasin is overruled.

4. Class counsel shall also receive $34,554.80 as reimbursement for litigation expenses, to be paid promptly from the settlement fund.

5. Class counsel are awarded attorney's fees of $900,000. Four-hundred fifty thousand shall be paid after the "effective date" as defined in the settlement agreement. The remaining $450,000 shall be paid when class counsel certify that all funds have been properly distributed and the file can be completely closed.

6. Plaintiff Caudle is granted an incentive award of $500, to be paid from the settlement fund.

7. Plaintiff White is granted an incentive award of $320, to be paid from the settlement fund.

8. Settlement Administrator Simpluris, Inc. is granted administration costs of $17,250, to be paid from the settlement fund.

**IT IS SO ORDERED.**

Dated: December 16, 2019. 
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE